## THE STATE v. LOUIS R. ENGLISH, Appellant.

### Division Two, June 5, 1925.

1. **STEALING CHICKENS: Sufficient Evidence.** The disappearance of chickens from the owner's yard on the night she and her family were absent; the sale of chickens of like kind in a near-by town early the next morning; the similarity in the bands taken from the legs of those sold, to the leg bands worn by the owner's chickens; the undoubted participation of the defendant in their sale by the stranger with whom he was associated and riding in a certain automobile in the neighborhood in which they were stolen and along the road to the town in which they were sold during the night they were stolen; the appearance of both in the town in the automobile early the next morning; their failure to claim the coops in which they had sold the chickens, together with an utter lack of explanation by defendant of his movements and his con-nection with the stranger and the chickens—all these things raise something more than suspicion that the defendant is guilty of stealing the chickens, and are sufficient to sustain a verdict of guilty—particularly so where it is not shown that other chickens of the same kind were sold or raised in the neighborhood or that leg bands of like character were used by other near-by chicken-raisers.

2. **DEFENDANT AS WITNESS: Impeachment.** The failure of de-fendant to testify when he is on trial for a crime cannot be con-sidered by the court in passing upon his demurrer to the evidence; but where he does testify, and denies that he committed the offense, he lays himself open to contradiction by impeachment the same as any other witness.

3. ———: **General Denial of Guilt: Failure to Explain: Comment: Con-sideration by Court.** A defendant who offers himself as a witness cannot be cross-examined about matters not referred to in chief; but where his denial is general and explains nothing, consisting only of a statement that he did not steal the chickens, it is proper

for the attorney for the State to comment upon his failure to explain the circumstances which involve him in the crime, and for the court, in passing upon his demurrer to the evidence and in drawing inferences from the evidence, to consider his utter lack of explanation.

4. **CHANGE OF VENUE: Supplementary Transcript.** Where a change of venue was allowed and the transcript of the record filed in the circuit court of the county to which the case was sent did not show that the circuit court of the county in which the indictment was returned was regularly opened by proclamation of the sheriff, or that the grand jury which returned the indictment was sworn or that a foreman was appointed, it is proper to permit the prosecuting attorney, before the case is called for trial, to file a supplementary transcript showing all these things.

5. **CONTINUANCE: Filing Supplementary Transcript: Surprise.** A change of venue having been allowed and the transcript of the record being defective and incorrect in certain material respects, permission of the court to the prosecuting attorney to file and a filing of a supplementary transcript which includes the omitted record entries, before the case is called for trial, is not surprise, and is no ground for a continuance. The correction of an incomplete transcript is not such surprise as has anything to do with the merits of the case, or with any fact relating to the guilt or innocence of defendant.

6. **INSTRUCTION: Former Conviction: Punishment.** An instruction which told the jury that if they found that the defendant had been convicted of a felony in the circuit court and had served a term of two years' imprisonment, and if they found that he had stolen the chickens mentioned in the indictment, of the value of fifty dollars, they should convict him and assess his punishment at five years' imprisonment, was not error in that it gave the jury no opportunity to find him guilty of the crime charged without finding he had been formerly convicted, where the record of his former conviction was conclusive of that matter and the fact was not denied. The jury were properly instructed as to the punishment, because if they found him guilty of the crime charged and that he had been formerly convicted, the only punishment they could inflict upon him under the statute (Secs. 3314, 3702, R. S. 1919) was five years' imprisonment in the penitentiary.

7. ———: **On Circumstantial Evidence: Conflicting.** Instructions for the State declaring that circumstantial evidence must be of such a character as to exclude every reasonable hypothesis other than that the defendant is guilty, and defining circumstantial evidence as proof of such facts and circumstances connected with the surroundings and commission of the crime charged as tend to show

the guilt or innocence of the party charged, and requiring the jury to believe from such circumstances beyond a reasonable doubt that the defendant is guilty, are correct as far as they go, and do not conflict with an instruction for defendant which defines circumstantial evidence with more particularity and directs the jury, if the circumstances shown do not meet the requirements, if a single link in the chain of circumstances is wanting, to acquit defendant.

8. **FAILURE TO INSTRUCT**: Collateral Matter: Credibility of Witnesses. The failure of the court to instruct on matters purely collateral, such as the credibility of the witnesses, is not error. The credibility of the witnesses is not an essential element of an offense.

9. **VERDICT**: Less than Statutory Penalty: Not Responsive to Pleadings or Instructions: Right of Convict to Complain. Where the least punishment the jury could have assessed if they found defendant guilty, under the indictment and instructions, was five years' imprisonment, and they assessed his punishment at three years, it was the duty of the trial court, upon the return of a verdict of guilty, to render judgment assessing the punishment at five years' imprisonment; but where the court did not do so, but rendered judgment assessing the punishment, according to the verdict, at three years, and defendant did not complain of the error in his motion for a new trial or on appeal, the judgment will be affirmed, because the error was in his favor. And in such situation, an assignment that the judgment must be reversed because the verdict was not responsive to the pleading or instructions, cannot be allowed.

Citations to Headnotes: Headnote 1: Larceny, 36 C. J. sec. 483. Headnote 2: Criminal Law, 16 C. J. sec. 1022; Witnesses, 40 Cyc. p. 2558. Headnote 3: Criminal Law, 16 C. J. secs. 2248, 2297. Headnote 4: Criminal Law, 17 C. J. sec. 3449. Headnote 5: Criminal Law, 17 C. J. sec. 3578. Headnote 6: Criminal Law, 16 C. J. secs. 2456, 3175. Headnote 7; Criminal Law, 16 C. J. sec. 2478. Headnote 8: Criminal Law, 16 C. J. sec. 2438; 17 C. J. sec. 3707. Headnote 9: Criminal Law, 16 C. J. sec. 3092.

Appeal from Shelby Circuit Court.—*Hon. V. L. Drain*, Judge.

AFFIRMED.

*E. W. Nelson* and *Lewis O'Connor* for appellant.

(1) The court erred in allowing the prosecuting attorney to file the supplemental transcript on the eve of the trial, over the objections of the defendant, the request to file same not coming from the clerk of the circuit

court of Marion county, and not being sent up and filed and done upon an order made by the Circuit Court of Shelby County to the Clerk of the Marion County Circuit Court to transmit and certify the correct record. Sec. 3983, R. S. 1919; State v. Rodman, 173 Mo. 690. (2) The defendant relied upon the record of the Shelby Circuit Court in this cause being as represented by the original transcript filed on May 25, 1923, and the filing of the supplemental transcript on the 11th day of June, 1923, on the eve of the trial, was a surprise to the defendant and defendant's application for a continuance assigned on that ground should have been sustained. (3) Instruction 1 given by the court for the plaintiff is erroneous, and does not properly and fully declare the law and the punishment in the case. 16 C. J. 1025, 1026; State v. Nicholas, 222 Mo. 431; State v. Sands, 77 Mo. 119; State v. McNally, 87 Mo. 644; State v. Milligan, 170 Mo. 215. (4) Plaintiff's instructions numbered 2 and 3 and defendant's Instruction 5 are conflicting and contradictory and are confusing to the jury. Plaintiff's instructions were not cured by defendant's instruction. State v. Simms, 77 Mo. 118; State v. McNally, 87 Mo. 644. (5) The verdict of the jury is not responsive to the pleadings or the instructions and will not support a judgment. Sec. 3702, R. S. 1919 (2nd div.); 3 Graham & Waterman on New Trials, 1378; 1 Bishop Crim. Proc. (3 Ed.) sec. 1005; 2 Thompson on Trials, sec. 2640; Clark on Crim. Proc., p. 485; 1 Wharton Crim. Pl. & Prac. (9 Ed.) sec. 756; State v. Pierce, 136 Mo. 40; State v. Rowe, 142 Mo. 442; 16 C. J. 1112. (6) The evidence disclosed by the entire record was insufficient to justify or support the verdict of the jury and it should not be permitted to stand. State v. Packwood, 26 Mo. 240; State v. Brosius, 39 Mo. 543; State v. Mansfield, 41 Mo. 470; State v. Daubert, 42 Mo. 238; State v. Marshal, 47 Mo. 378; State v. Burgdorf, 63 Mo. 65; State v. Jarger, 66 Mo. 173; State v. Thomas, 78 Mo. 342; State v. Glahn, 97 Mo. 689; State v. Primm, 98 Mo. 368; State v. Young,

119 Mo. 526; State v. Prendible, 165 Mo. 353; State v. Concelia, 250 Mo. 424.

*Robert W. Otto,* Attorney-General, and *J. Henry Caruthers,* Assistant Attorney-General, for respondent.

(1) Inaccuracies of the transcript of the record filed by the Clerk of the Circuit Court of Marion County on the change of venue to Shelby County were properly corrected by the filing of supplemental or amended transcript by the prosecuting attorney. State v. Bell, 136 Mo. 123. (2) Appellant alleges that the verdict is not responsive to the pleadings or instructions, and therefore will not support the judgment. The charge was stealing chickens in the nighttime. Instruction 1 told the jury if they found the defendant guilty they should assess his punishment at five years in the penitentiary. The jury "find the defendant guilty and assess his punishment at three years in the penitentiary." The judgment was rendered accordingly, which was the court's duty. Secs. 3692, 3908, 4047, R. S. 1919.; State v. Snyder, 98 Mo. 561; State v. Hembree, 242 S. W. 914. (a) The fact that the jury returned a verdict more favorable to appellant than the instruction would warrant, is not a matter about which he may justly complain. State v. Lowe, 93 Mo. 574; State v. Gates, 130 Mo. 357; State v. Clinton, 213 S. W. 842. (b) The testimony was sufficient to raise an issue for the jury and amply supports the verdict and this court will not interfere therewith. State v. Hembree, 242 S. W. 914; State v. Arnett, 210 S. W. 83; State v. Long, 257 Mo. 208.

WHITE, J.—The defendant was indicted by a grand jury in the Circuit Court of Marion County, for grand larceny under what is termed the Habitual Criminal Statute, Section 3702, Revised Statutes 1919. The indictment charged that in October, 1922, in the County of Marion, he feloniously, in the nighttime, stole thirty-four chickens of the value of $50, the property of Mary Glen-

denning; that previously he had been convicted in the Circuit Court of Marion County, in the year 1920, of larceny from a dwelling house, sentenced to serve, and did serve, two years in the penitentiary on said charge.

A change of venue was allowed and the cause sent to Shelby County where, June 12, 1923, on a jury trial, a verdict was rendered finding defendant guilty and assessing his punishment at three years' imprisonment in the penitentiary. A judgment was entered in accordance with the verdict, and the defendant appealed.

I.   The appellant assigns error to the action of the trial court in overruling his demurrer to the evidence. Demurrer to Therefore, it becomes necessary to state the Evidence. evidence at some length.

October 11, 1922, Mary Glendenning and her husband lived on a farm in Marion County. At that time she owned 162 pure-bred white Plymouth Rock chickens which she kept in a yard near her dwelling house. They were marked by celluloid leg bands, some of which bands were red and some lavender in color.

About seven o'clock in the evening of that day Mr. and Mrs. Glendenning left home to attend a tent meeting in the neighborhood. At that time the chickens were all there. The Glendennings returned home about ten o'clock, and during the night heard no disturbance. They arose about five o'clock the next morning. Mrs. Glendenning remained home all that day, and in the afternoon when she fed her chickens she counted them and found thirty-five were gone. They were pure-bred chickens, and the thirty-five missing were worth two dollars each. Leg bands were exhibited by the prosecuting attorney, and witness identified them as the same kind as those which she had upon her stolen chickens. These leg bands so exhibited had been taken from chickens brought in La Grange by one T. M. Decker the next day after hers disappeared. The chickens were never recovered.

The Glendennings lived in Round Grove Township about a mile and a half west of Hester. Elbert Carter,

a witness for the State, lived about a mile and a half east of Hester, from two and one-half to three miles east of the Glendennings' house. The main road, called the Quincy-Newark road, passed through Hester. It is not clear whether this road passed Glendennings' house or Carter's house. Two main traveled roads went from Hester to LaGrange, one through Maywood and the other through Taylor. It was four miles from Hester to Maywood, and ten miles from Hester to LaGrange, making fourteen miles from Hester to LaGrange that way. It was likewise fourteen miles from Hester to LaGrange by way of Taylor. It was claimed by the State that the Glendenning chickens were sold in LaGrange early the next morning, October 12, 1922. It appears from the evidence that to go from the Glendenning home or the Carter home, on opposite sides of Hester, it was necessary to go through Hester.

T. M. Decker was engaged in the poultry business at LaGrange and knew the defendant. On the morning of October 12th about six o'clock when he got up he found on his front porch two coops filled with white Plymouth Rock chickens which had been brought and unloaded there before daylight. When he opened his place of business at six o'clock a man who gave his name as Johnson was there and sold him the chickens. Decker paid for them with a check for $32.04. Two of the chickens were dead. At the time the defendant was near by. Decker took several celluloid leg bands off the chickens, turned them over to the Prosecuting Attorney of Marion County, and afterwards they were identified by Mrs. Glendenning as the same kind as those she had on her chickens. The coops in which the chickens were found in front of Decker's store bore the name of a poultry dealer in Quincy. They did not belong to Decker, and were never claimed by anyone.

On the same morning, after buying the chickens, Decker made a trip to Liberty Church; about four miles out of town he saw the defendant and the man who had

sold him the chickens, in a one-seated Ford runabout. They had stopped and the defendant was getting out.

Elbert Carter, who lived about two and one-half or three miles from the Glendenning place on the other side of Hester, at about nine or ten o'clock at night, October 11th, saw the defendant and a stranger in a Ford runabout about a half mile from his place towards Hester. They had run into the creek and the stranger had gone to Carter's house for the purpose of getting someone to pull the Ford out of the creek. Carter took his team and pulled it out. The defendant was present and paid him for that service. The place where the Ford was pulled from the creek was about a hundred yards from what is called the "high bridge" over the Fabia River. Carter returned home with his team. The Ford engine was running when he left the two men. It took him about fifteen minutes to get to his home, which was a half mile away, and the Ford did not overtake him, nor apparently come that way, the inference being that it probably went back to Hester, which would be on the road to LaGrange.

One Adam Lentz, as he was going home between nine and ten o'clock, on the night of October 11th, crossed the high bridge and saw a Ford runabout, with its engine running, sitting near the bridge. Two men were in the Ford car, but he did not recognize either of them. He saw a man get into the car, and saw a white chicken walking under a barbed wire fence near. The inference is that the loose chicken probably escaped from the car, as chickens roost at night and do not run about the highway.

One Hugh Laytham testified that he was conducting a hotel at LaGrange and knew the defendant. The defendant and the stranger came to his hotel and took rooms the morning of October 11th. They left that morning, and Laytham saw the defendant the following morning, October 12th, at his hotel about six o'clock. He was going through the hallway to his room. Defendant and the stranger came down stairs and paid the room-rent and the two walked out together. Shortly afterward the

stranger drove up in front of the hotel in a Ford roadster which had no license. A deputy marshal was called and defendant told him the car was his, that he had just bought it, and showed what purported to be a bill of sale. He said that he was going to Durham to apply for a license. The marshal told him he had better make application there or he might be arrested before he got to Durham. The defendant then walked up the street to where the stranger was; the two came back, got in the car and started south. The deputy marshal was acquainted with the defendant, and testified to the facts about the license. He said he afterwards learned the name of the stranger was Clucky. He testified that the defendant went to a garage and got a blank application for a license, then he and the stranger got into the car and left town.

The State offered evidence of a former conviction of defendant, introducing the files, the judgment, the record showing the appeal, the affirmance of the case in the Supreme Court, and records of the penitentiary in relation to the defendant's incarceration, service and discharge.

The defendant testified on his own behalf, as follows:

"Q. State your name. A. Louis R. English.

"Q. You are the defendant in this case? A. I am.

"Q. Mr. English, did you steal the chickens with which you are charged in this indictment? A. I did not."

These were all the questions asked the defendant by his counsel. The State inquired of him about his former conviction and about a conviction for another offense.

Defendant offered evidence to show he was registered at a hotel in Quincy, Illinois, October 11 and 12, 1923.

In rebuttal the State proved by several witnesses that defendant had a bad reputation for truth.

The disappearance of the chickens the night of October 11th, the sale of chickens like them early the next

Incriminating Facts,

morning, the similar leg bands, the undoubted participation of the defendant in the sale of the chickens and his association

with the stranger, the movements of the stranger and the defendant in the night in the neighborhood on the road between the residence of the Glendennings and La-Grange, the appearance of the stranger and the defendant the next morning in the Ford at LaGrange, the peculiar movements of the defendant and the stranger, their failure after the sale to claim the coops in which they had sold the chickens, with an utter lack of explanation by the defendant, all raise something more than suspicion that the defendant was guilty. It is not shown that other chickens of the same kind were sold or raised in the neighborhood, or that bands of like character were used by other chicken-raisers near.

While the failure of a defendant to testify when he is on trial cannot be considered by the court, in that case defendant testified and therefore laid himself open to contradiction by impeachment the same as any other witness.

While he could not be cross-examined about any matters not referred to in chief, his denial was general and explained nothing. It would have been proper for the attorney for the State to comment upon his failure to explain the circumstances which told against him in the evidence. [State v. Prunty, 276 Mo. 376, and cases cited.] We are at liberty here, in drawing inferences from the evidence, to consider the utter lack of explanation by the defendant. He made no attempt to account for his movements the night of October 11th and morning of October 12th; his relation to the stranger; where he got the chickens which he and the stranger sold in LaGrange, all of which an innocent man would have been ready to explain. The jury had a right to consider this utter lack of exculpating evidence on the part of the defendant. While the law in many ways protects a defendant from damaging evidence and improper inferences from his silence, it does not protect him from necessary inferences, drawn from an entire failure, as in this case, to explain his connection with incriminatory circumstances. We think a case was made out for the jury.

II.   Before the case was called for trial the Prose-
cuting Attorney of Marion County was granted leave to
file, and filed, a supplementary transcript of the record.
**Supplementary**
**Transcript.**          The defendant first filed a plea to the juris-
diction, which was overruled. He then filed
a motion to strike out the supplemental
transcript on the ground that the court had no right to
consider it. The motion was overruled and error is as-
signed to the ruling. The transcript which first went
from Marion County Circuit Court to the Shelby County
Circuit Court, failed to show that the Circuit Court of
Marion County in which the indictment was returned, was
regularly opened by proclamation of the sheriff of the
county, or that the grand jury which returned the in
dictment was sworn, or that a foreman was appointed.
The supplemental transcript showed those facts.

Section 3983, Revised Statutes 1919, provides for
the certification of the transcript of a record when a
change of venue is taken, and Section 3984 provides for
the filing of same by the clerk of the court to which the
cause is sent. Where the transcript is incomplete or in-
correct in any respect, a correction may be had by filing
an amended transcript. [State v. Bell, 136 Mo. 120.] The
ruling was correct.

III.   The defendant then filed a motion for continu-
ance on the ground that the filing of the amended tran-
script was a surprise and led the defendant into ambush.
**Continuance:**
**Surprise.**          Apparently the surprise inflicted upon the
defendant was the correcting of the tran-
script which he thought was so defective as
to defeat the prosecution. The surprise had nothing to
do with the merits of the case, nor with any fact relat-
ing to the guilt or innocence of the defendant. He thought
he had a sure chance of acquittal because of a defective
record, and the correction of the record removed that
chance. It is not claimed that he would be in better po-
sition, at a subsequent term, because the record still
would be the same and he then would suffer the same dis-

advantage in having a correct record as he suffers now. No advantage would accrue to him because of a continuance. The point is therefore ruled against appellant.

III. Appellant assigns error to the giving of instruction numbered 1. It directed the jury that if they found that the defendant in 1920, in the Circuit Court of Marion County, had been convicted of a felony and served two years in the penitentiary, and if they found that he had stolen the chickens mentioned in the indictment, property of Mary Glendenning, of the value of fifty dollars, they should convict him and assess his punishment at five years in the penitentiary.

**Instruction: Former Conviction.**

Instruction No. 4, asked by and given for the defendant, told the jury that they could consider the former conviction if they found it to be a fact, only as bearing upon the question of the amount of punishment they would inflict.

The defendant claims Instruction No. 1 was error because the jury was not given an opportunity to find the defendant guilty of the crime charged without finding him guilty of the former crime. As Instruction No. 1 reads, the jury could not find the defendant guilty at all, unless he had been formerly convicted and had served a term in the penitentiary. If they failed to find that, as well as that he was guilty of the present crime, they would have to acquit him. They were properly instructed as to the punishment because if they found him guilty of the present crime and of the former offense, the only punishment they could inflict upon him was five years in the penitentiary. [Secs. 3314, 3702, R. S. 1919.]

Besides the record of the former conviction was conclusive of that matter, and the fact was not denied. Defendant's counsel objected, when defendant was asked on cross-examination about the former conviction, on the ground that the record was the best evidence.

IV.   The court gave for the State instructions numbered 2 and 3, relating to circumstantial evidence, and for the defendant gave Instruction No. 5, on the same subject.   The appellant claims the court erred

Circumstantial
Evidence:
Instructions.

in this because Nos. 2 and 3 are in conflict with No. 5.   They are perfectly correct in all that is stated; they require that circumstantial evidence must be of such character as to exclude every reasonable hypothesis other than that the defendant is guilty, and define circumstantial evidence as proof of such facts and circumstances connected with the surroundings and commission of the crime charged as tend to show the guilt or innocence of the party charged, and require the jury to believe from such circumstances, beyond a reasonable doubt, that the defendant is guilty. Instruction No. 5, offered by the defendant, defines circumstantial evidence with more particularity and directs the jury if the circumstances shown do not meet the requirements, if a single link in the chain of circumstances is wanting, to acquit the defendant.   There is no inconsistency between the instructions; the only difference between them is that Instruction 5 for the defendant is more complete and particular in its expression than Instructions Nos. 2 and 3.   It is not claimed that Instructions 2 and 3 erroneously stated any proposition of law. There was no error in that matter.

V.   Error is assigned to the failure of the court to instruct the jury on the credibility of witnesses.   Defendant offered no such instruction, and it could be error only

Failure to
Instruct.

under the assignment that the court failed to instruct on all the law of the case.   While it is the duty of the court to instruct on all the law of the case necessary for the guidance of the jury, whether requested or not, it is not error for the court to fail to instruct on matters purely collateral.   [State v. Garrett, 226 S. W. l. c. 5; State v. Fletcher, 190 S. W. 317, l. c. 323; State v. Herring and Baldwin, 268 Mo. l. c. 536.]   What is meant by a question collateral to the main

issue is stated in case of State v. Lackey, 230 Mo. 707, l. c. 720, where, quoting from an early case, the opinion says it is the duty of the court "to require the jury to find all the *essential elements of an offense embraced within the charge.*" Anything else is collateral. If the jury is required to find all the elements of the offense embraced within the charge, the court does not fail to instruct on all the law of the case. Several cases are cited in the Garrett case, supra, showing the limits of the rule. In the case of State v. Herring & Baldwin, supra, this court said: "The instruction is correct as far as it goes. The omission complained of is one of non-direction, not misdirection." That applies here; it also applies to the incompleteness of the instruction on circumstantial evidence noted in the previous paragraph.

VI. Appellant claims that the verdict is not responsive to the pleadings, nor to the instruction, and is insufficient to support the judgment. The section under which the defendant was charged provides that if one has been convicted and has served a term in the penitentiary his punishment for the second offense shall be the longest term prescribed for such conviction if it were the first offense.

The defendant was found guilty of larceny provided in Section 3314, where the maximum penalty for stealing domestic fowls in the nighttime is imprisonment in the penitentiary not to exceed five years.

This being a second offense, as defined in Section 3702, the lowest and only punishment which would be inflicted upon the defendant when found guilty was five years' imprisonment in the penitentiary. But the verdict found him guilty and assessed his punishment at three years in the penitentiary.

Section 4048, Revised Statutes 1919, provides that where the jury, finding a defendant guilty, fails to agree on a punishment, or does not declare such punishment by its verdict, or assess a punishment not authorized by law, the court shall assess and declare the punishment. Here

the jury assessed a punishment not authorized by law, and it was the duty of the court in rendering judgment to assess the punishment at five years in the penitentiary. The verdict was not invalid nor inoperative, and authorized a judgment. The point made by the appellant is not well taken.

While it was the duty of the court, upon return of the verdict, to assess the punishment at five years in the penitentiary, and to render verdict accordingly, it did not do so, but assessed the punishment at three years, following the verdict. This undoubtedly was error. The defendant, however, in his motion for new trial, did not complain of that error, and he does not complain here, and has no right to complain because the error, whatever it was, was in his favor and reduces the punishment to which he is entitled. If error were properly presented here for our review our only recourse would be to remand the case with directions to the trial court to render judgment in accordance with the law. But inasmuch as the defendant does not complain of the judgment in that respect, and inasmuch as he is not harmed by the error, we may disregard it.

The judgment is affirmed. All concur.