STATE v. OLEN KIMBROUGH, Appellant.—No. 38045.—166 S. W. (2d) 1077.

Division Two, November 12, 1942.

Rehearing Denied, January 4, 1943.

*Ruark & Ruark* and *G. D. Long* for appellant.

*Roy McKittrick,* Attorney General, and *W. O. Jackson,* Assistant Attorney General, for respondent.

ELLISON, J.—The appellant was convicted in the circuit court of Lawrence county, on change of venue from Newton county, of grand larceny for the theft of a jersey cow, in violation of Sec. 4456, R. S. 1939, Mo. R. S. A., sec. 4456. The information was drawn under the habitual criminal statutes, Secs. 4854-4855, R. S. 1939, Mo. R. S. A., secs. 4854-4855, and alleged that appellant had previously been convicted, punished and discharged in Oklahoma for robbery with firearms, a crime which would be punishable by imprisonment in the penitentiary if committed in this State, Sec. 4453, R. S. 1939, Mo. R. S. A., sec. 4453. The jury in the instant case assessed his punishment at imprisonment in the Missouri penitentiary for a term of five years, the maximum for the larceny under subdivision 3, Sec. 4457, R. S. 1939, Mo. R. S. A., sec. 4457; though the punishment may range as low as two years, under Sec. 4850, R. S. 1939, Mo. R. S. A., sec. 4850. But subdivision 2 of Sec. 4854, supra, provides such maximum punishment shall be assessed upon a conviction under the habitual criminal act.

There was evidence pro and con on the question of appellant's guilt in stealing the cow. He does not contend on this appeal that the evidence on the merits was insufficient to support the verdict. The assignments in his brief are limited to these points: (1) the trial court erred in admitting in evidence the record of his prior conviction in Oklahoma, because it was not properly authenticated; (2) the giving of the State's instruction No. 1 was erroneous because it required the jury either to acquit or to assess the maximum punishment of five years' imprisonment in the penitentiary, without al-

lowing them the alternative of assessing a lighter penitentiary sentence for the grand larceny alone, independent of the prior conviction; (3) the refusal of appellant's application for a continuance was an abuse of discretion and a denial of justice.

Considering first appellant's assignment that the record of his prior conviction, confinement and discharge in Oklahoma (below called State's Exhibit 1) was not properly authenticated under U. S. C. A., Title 28, sec. 688. The document consisted of two parts: (1) appellant's prison record, showing a conviction for robbery with firearms, a 10 years' sentence, and discharge after 5 years, and bearing a printed subscription of the warden's name "by" a *deputy* warden whose name was in writing; (2) a copy of the judgment of conviction in the District Court of Osage county, Oklahoma, certified only by a *deputy* clerk of that court. The certified copy of the judgment was a part of the penitentiary records. Following these was a certificate of authentication by the *assistant* record clerk of the Oklahoma penitentiary, which was in turn authenticated by R. W. Higgins, presiding judge of the District Court of Pittsburg county, Oklahoma, the latter certificate being also authenticated by the clerk of that court through a deputy. But the deputy clerk's certificate was not authenticated by the judge.

The specific contentions in appellant's brief are that there was no showing of laws of Oklahoma requiring "such a record" to be kept by "the officer certifying," and that we cannot take judicial notice of the statutes of that state; that the authentication is also bad as having been made by the *deputy* district clerk rather than by the clerk of the court in person; that the *judgment* was not authenticated as required by the Federal statute in that such authentication could not legally be made by the Warden or his assistant clerk, or by Judge Higgins of the Pittsburg county District Court or his clerk or deputy clerk, but only by the judge and clerk of the Osage county District Court where the judgment was rendered; and finally that Judge Higgins' authentication of the assistant record clerk's certification of the prison record and judgment on file does not state the prison was in Pittsburg county where he presided, and at most was merely an authentication of a copy of a copy of the judgment, which rendered the latter inadmissible in evidence.

We must first determine whether the objections made and preserved by appellant in the trial court entitle him to challenge the authentication of his prison record and judgment of conviction as he has done in his brief here. When the document was offered in evidence the only objection interposed by appellant (save on points now abandoned) was that "it is not properly authenticated according to proof of (in?) evidence." We interpret this as a general objection that the authentication was insufficient as the proof stood. The assignments in his motion for new trial complaining of the admission of the document (so far as pertinent here) are even more general.

They charge: "(4) That the court erred in admitting into the evidence State's Exhibit No. One; (5) That . . . the court erred in permitting the prosecuting attorney to exhibit the prison record and the record of the Oklahoma State Penitentiary to the jury." It will be noted these assignments do not contain a charge even that the document was not properly authenticated; make no complaint about the admission of the judgment of conviction, as such; and are mere conclusions.

There is good reason for saying these assignments did not "set forth in detail and with particularity . . . the specific grounds" relied on, as required by Sec. 4125, R. S. 1939, Mo. R. S. A., sec. 4125. The State's brief specifically assails assignment No. 4 on that ground, and later asserts, doubtless referring to assignment 5: "The assignment of error in the motion for new trial fails to specify what portion of the record, if any, was incompetent, or prejudicial and, therefore presents nothing to this Court." Among others, the decisions cited are: State v. Judge, 315 Mo. 156, 163-4, 285 S. W. 718, 721(10), and State v. Clark (Mo. Div. 2), 111 S. W. (2d) 101, 102(1).

Many cases on this point are digested in 9 West's Mo. Dig. "Criminal Law," secs. 1064(4), 1129(3). Their general purport is that the evidence complained of must be substantially stated or identified; and the *reasons* why it is claimed to have been inadmissible must be assigned, at least with sufficient particularity to inform the trial court of the merits of the assignment. It is perfectly clear that an assignment in a motion for new trial merely declaring it was error to admit a specified document in evidence, is wholly insufficient; and assignment No. 5, which says only that it was error to permit the prosecuting attorney to exhibit the same document to the jury, is no better. Neither gives any reason whatever. Appellant's complaint on the admission of this evidence cannot be sustained. We have less hesitation in reaching that conclusion because the record shows the appellant's rights on the merits of the issue were not prejudiced. He voluntarily testified on direct and cross-examination that he had been convicted of robbery with firearms, sentenced to the penitentiary in Oklahoma for ten years, and served the sentence in five years, thence returning to southwest Missouri where he took up the occupation of farming.

The next assignment is that the trial court erred in giving the State's instruction No. 1, which in substance told the jury if they found and believed from the evidence beyond a reasonable doubt that appellant stole the cow; and, that previously he had been convicted in the District Court of Osage county, Oklahoma, of the crime of robbery with firearms, sentenced to imprisonment in the Oklahoma penitentiary for ten years, and that afterwards he was duly discharged upon compliance with said sentence; then they would find appellant guilty as charged, and assess his punishment at imprisonment in the Missouri penitentiary for a term of five years; but unless they so found the facts they would acquit him.

The complaint made is that the instruction required the jury either to acquit appellant or to assess the maximum punishment of five years' imprisonment in the penitentiary, without giving them the alternative of assessing a lower penitentiary sentence of from two to five years for larceny independent of the habitual criminal charge. In effect, the contention is: (1) that the issues of guilt or innocence of the offense charged *and* former conviction cannot be submitted in the conjunctive alone; (2) that the alleged fact of the prior conviction must be separately or alternatively submitted as an issue, with a converse direction authorizing the assessment of a lower punishment as for a first offender if that issue be found in the negative; (3) and that this is true notwithstanding the defendant may have made a judicial admission of the former conviction, as appellant did here. The decisions cited which are most nearly in point are: State v. McBroom, 238 Mo. 495, 499, 141 S. W. 1120, 1121; State v. Bresse, 326 Mo. 885, 894-5, 33 S. W. (2d) 919, 922 (12); State v. Cardwell, 332 Mo. 790, 793-7, 60 S. W. (2d) 28, 29-31; State v. McBride, 334 Mo. 890, 893(2), 68 S. W. (2d) 688, 689; State v. Sumpter, 335 Mo. 620, 626-7, 73 S. W. (2d) 760, 762-3.

The holding in the McBroom case, where the two issues were submitted conjunctively as here, sustains appellant's contention on the necessity of alternative submission of the issue of former conviction; but is not in point on the non-conclusive effect of a defendant's admission of his former conviction, because the opinion held the admission there was not binding on the defendant since it was not made by him but only by his counsel in their brief. The Bresse case also is in point. It held hypothetically an habitual criminal conviction under a mandatory instruction to assess the maximum punishment upon a finding of guilty of the offense charged (the instruction being silent on the issue of former conviction) could not stand when based only on an admission of the former conviction made by the defendant to the judge *in the absence of the jury*. But the reason given was that the issue *must be* submitted to and determined by the jury, even when based on an admission. The opinion is authority on the non-conclusive effect of such admissions.

On that point the Cardwell and Sumpter cases (the latter hypothetically) squarely made the same ruling when there was no question about the defendant's having made an open and definite admission to the jury of his former conviction. However the Sumpter case does not touch on the point of alternative submission of the issue. The Cardwell case, and the McBride case which follows it, do not go as far as the McBroom case, by holding a failure to submit the issue of former conviction alternatively would be *error*; but they say it is "better practice." In the Cardwell case (as also hypothesized in the Bresse case) the instruction did not submit or even mention the issue of former conviction, but simply directed the assessment

of the maximum punishment if the jury found the defendant guilty of the offense charged.

The Cardwell decision refers to two cases announcing a contrary doctrine, and was doubtless influenced by them in ruling merely that it was "better practice" to submit the issue of former conviction in the alternative (rather than error to fail to do so, as held in the McBroom case). They are State v. Asher, 246 S. W. 911, 914, and State v. English, 308 Mo. 695, 706, 274 S. W. 470, 472. The Asher case affirmed an habitual criminal conviction for first degree robbery where the maximum punishment of life imprisonment was assessed, and held the trial free from error. The appellant-defendant there contended an instruction given for the State assumed his alleged former conviction when the record failed to show it; and also assumed the fact of his discharge from the penitentiary upon compliance with the sentence. The decision held that contention without merit because: "In open court he solemnly admitted the fact of his conviction and sentence, and proved his parole and full pardon;" and the question whether the record showed his former conviction "becomes unimportant in view of the solemn admission."

This was certainly a holding that the State's instruction could *assume* facts which the defendant had admitted. But the Cardwell case observes that this Asher opinion did not disclose whether the issue of the defendant's former conviction, punishment and discharge was submitted to the jury in the alternative. That is true. However, an examination of the original record in the cause, on file here, shows that the fact of former conviction was not submitted at all—as an *issue*. In harmony with the defendant's admission and proof, the instruction merely stated affirmatively as a *fact* that he had previously been convicted, ▮▮▮▮ punished and discharged; submitted as an issue only the question of his guilt of the robbery charged; and declared that if the jury found him guilty of that charge they should assess the (maximum) punishment of life imprisonment.

In State v. English, supra, 308 Mo. 1. c. 706(6), 274 S. W. 1. c. 473 (6-8), an habitual criminal conviction was affirmed. An instruction had been given in the conjunctive (as here) telling the jury if they found the defendant had been convicted of the prior felony alleged, *and* had committed the grand larceny charged, they should convict him and assess his punishment at the maximum of five years. Speaking of this instruction the opinion said (italics ours):

"The defendant claims Instruction No. 1 was error because the jury was not given an opportunity to find the defendant guilty of the crime charged without finding him guilty of the former crime. As Instruction No. 1 reads, the jury could not find the defendant guilty at all, unless he had been formerly convicted and had served a term in the penitentiary. If they failed to find that, as well as that he was guilty of the present crime, they would have to acquit him. *They were properly instructed as to the punishment because if*

*they found him guilty of the present crime and of the former offense, the only punishment they could inflict upon him was five years in the penitentiary.* (Citing statute.)

"Besides the record of the former conviction was *conclusive* of that matter, and the fact was not denied. Defendant's counsel objected, when defendant was asked on cross-examination about the former conviction, on the ground that the record was the best evidence."

There can be no doubt that the italicized statement in this English case and one to the same effect in State v. Jones, 339 Mo. 893, 896, 98 S. W. (2d) 586, 588(5), are literally and legally correct. But as to whether and when the issue of former conviction should be further submitted in the alternative, or converse; and on the question whether a judicial admission by the defendant of his former conviction is conclusive on him; we think our decisions need clarification, and are partly wrong. This applies to the English case and more especially to the Bresse, Cardwell and Sumpter cases (the latter written by the author hereof). Westhues, C., who wrote the Cardwell case, agrees in that view.

It is well established in this State that the defendant in a criminal case can stand mute and put the State on proof beyond a reasonable doubt of every essential element of the crime for which punishment is to be meted out. As said in the McBroom case: "Under our practice, however, no matter how strong the proof may be of an affirmative fact presented by the State, and notwithstanding there may be no contradiction thereof, still it is for the jury to say whether or not the fact is established." This rule applies to proof of the prior conviction as well as to other essential elements of the offense. Annotations, 58 A. L. R., p. 59; 85 A. L. R., p. 1104. We have no statute in Missouri prescribing how proof of the former conviction shall be made in an habitual criminal case. Ordinarily it would be by the best evidence—the original record or a duly authenticated copy thereof, plus evidence identifying the accused as the convict. But in our opinion this proof standing alone would not be *conclusive*, certainly not merely because the defendant had not denied it. We disagree with the English case on that point.

Where the evidence is not conclusive it is proper to submit conjunctively the dual issues of former conviction and guilt of the offense presently charged, with a direction to assess the maximum punishment in event of an affirmative finding. But nevertheless, the converse or alternative on the issue of former conviction also must be submitted. For the jury may find for the defendant on that issue but against him on the issue of guilt or innocence. Hence he is entitled to have them instructed on the range of punishment assessable against him as a first offender. It is not merely a question of "better practice," but of substantial right, comparable with the rights of a defendant when he is charged with a crime of which there are lesser

degrees—as to which see, Secs. 3952, 4070 (subdivision 4), 4844, 4845, R. S. 1939; Mo. R. S. A., secs. 3952, 4070, 4844, 4845; State v. Enochs, 339 Mo. 953, 958, 98 S. W. (2d) 685, 688(3).

So far, we think the McBroom, Cardwell and McBride cases are right in holding the question of former conviction ought to be submitted in the alternative. But this is true only when the fact of such prior conviction, punishment and discharge is *issuable.* In our opinion it is not issuable ▮▮▮▮ when the defendant has made a judicial admission thereof, at least to the jury. There is no special statute in this State declaring the evidential effect of such admissions, and none requiring additional proof of these facts. Therefore the general rules relative to the weight and sufficiency of evidence in criminal cases must govern. 16 C. J., sec. 3165, p. 1345; 24 C. J. S., sec. 1968, p. 1165. The general rule is that when a defendant makes a voluntary judicial admission of fact before the jury, it serves as a substitute for evidence and dispenses with proof of the actual fact. The admission is conclusive on him for the purposes of the case. 16 C. J., sec. 1248, p. 629; 22 C. J. S., sec. 733, p. 1254; Annotations, 58 A. L. R., p. 80; 82 A. L. R., p. 371, 80 A. L. R., p. 625; State v. Brooks, 99 Mo. 137, 142, 12 S. W. 633; State v. Hall, 312 Mo. 425, 440(IV), 279 S. W. 102, 107(7).

Since the defendant's judicial admission of his prior conviction is conclusive, there can be no reason for submitting that fact separately and alternatively as an issue for the jury, thereby suggesting to them that they can find in the negative upon it. The McBroom, Bresse, Cardwell, McBride and Sumpter cases may be distinguished on their facts in one way or another; but insofar as they hold or imply the issue of prior conviction *always* should be submitted alternatively, regardless of the defendant's judicial admission, they are incorrect. When the fact has been admitted we hold the submission of both issues (prior conviction and guilt) in the conjunctive alone, as here, is not error against the defendant. But we are bound by the facts in this record, and are not passing on instructions which omit all mention of the prior conviction when the defendant has made a judicial admission of it, as in the Cardwell case; or instructions which in the same circumstances affirmatively state as a fact that the defendant had been previously convicted, as in the Asher case.

Neither do we think the fact of the defendant's former conviction should be submitted alternatively as a jury issue, despite his judicial admission of it, on the theory that two grades or degrees of crime are involved—the greater for habitual criminals, the lesser for first offenders. The New York decisions make that differentiation, and we adopt it here, *arguendo.* With that concession, the following statutes, already cited, would apply. Secs. 4844 and 4845 authorize conviction for a degree of the crime inferior to that with which the defendant stands charged. Sec. 4070 requires the court to instruct on all the law of the case. And Sec. 3952 provides that no judgment

should be affected because "the evidence shows or tends to show him (the defendant) to be guilty of a higher degree of the offense than that of which he is convicted." But notwithstanding the statutes thus *validate* a conviction for a lesser degree of the crime when *all* the evidence showed the defendant was guilty of a greater, if any, [State v. Morrow (Mo. Div. 2), 188 S. W. 75, 76(3)]; still he is not for that reason entitled to instructions on the lesser degrees. State v. Johnson, 326 Mo. 1030, 1033, 33 S. W. (2d) 912, 913(2); and if such instructions be given it is merely error in his favor, State v. Murphy, 341 Mo. 1229, 1239, 111 S. W. (2d) 132, 137(20).

For the reasons stated in the preceding paragraphs we hold the court did not err in failing to submit the issue of prior conviction separately or alternatively—this because of appellant's judicial admission of his former conviction. His voluntary testimony on that point covered the question of his identity as the former convict; and also that of the prior offense charged, the punishment inflicted, the time served, and of his discharge. He did not say in so many words it was the same offense alleged in the information nor did he fix the dates; but he could have meant nothing else. There was no point in testifying about some other identical crime. And as a matter of fact it was appellant's trial theory that the conviction in Oklahoma shown by the State's evidence was the only one he had suffered in that state. For in addition to appellant's own showing on that point, his counsel asked several of his character witnesses about his good reputation "outside of this charge" (meaning the Oklahoma conviction, as the context shows); "outside of that trouble in Oklahoma;" and "with the exception of that one time."

█ The final assignment is that the trial court erred in overruling appellant's application for a continuance because of the absence of his witness Jack Hill, and the alleged negligence of the sheriff in failing to subpoena the witness. The application was filed just before the trial started on September 10, 1941. One of the appellant's defenses was an alibi—that he was at his home when the cow was stolen at a point some thirty miles away. His application stated the missing witness would swear he had been at appellant's home that night from 1 to 2 a. m., talking about organizing a baseball team. From the application, and evidence given in support thereof when it was presented, it appears that appellant and the witness had known each other for four or five years. Appellant was received in the Oklahoma penitentiary on September 12, 1935, and discharged on August 29, 1940. Appellant had managed a penitentiary baseball team during part of that period and it must have been during the same period that appellant and the witness Hill had become acquainted.

Shortly after appellant's arrest in the spring of 1941 he informed his counsel that he desired the testimony of Jack Hill as a witness

on the alibi issue. But he was unable to locate Hill until about ten days before the trial when he met him in Neosho. He informed Hill that he wanted to use him as a witness and Hill gave appellant his address as 871 Delmar Street, Springfield, Missouri, the home of *John Davis*. Appellant wrote it down, informed his counsel of the address, and a subpoena was accordingly issued for Hill, six days before the trial. The sheriff made return "not found," on the day of the trial. The deputy sheriff who handled the subpoena testified that he went to the address and there fround *Mrs. Fred Davie*. She said she had lived there 18 years and had never heard of Jack Hill or John Davis. The officer then went to the house next door and across the street to a grocery store, also to a residence with the same number on the next street north, 871 Normal. He could find no trace or acquaintance of Jack Hill or John Davis. Hence his return of "not found." The trial court thereupon overruled the application for continuance.

In connection with the assignment in the motion for new trial complaining of the overruling of the application, five affidavits were filed: two by the missing witness Jack Hill, one by *Fred Davey*, one by appellant's counsel G. D. Long, and one by a witness at the trial, Norman Cline. One of Hill's affidavits was short, and swore he "was within the state of Missouri and not seeking to evade process but was accessible to any officer" while the subpoena was out for service; and that he was not served. Hill's other affidavit corroborated appellant as to the midnight conference at the latter's home about a baseball · team; and also as to the meeting between the two at Neosho. This affidavit gave the name of the man who resided on Delmar Street as *John* Davey and said Davey was an old friend of Hill and his mother. It was made on September 13, three days after the trial, and further stated he (Hill) had read in a newspaper about appellant's conviction and thereupon got in touch with him. He had been "out scouting around for work," which explained the difficulty in finding him.

The affidavit of *Fred* Davey was short. He swore: that he resided at 871 E. Delmar, Springfield (the same address to which the deputy sheriff testified he had gone); that no officer had gone there to serve a subpoena on Hill; and that no officer had made inquiry of any relatives or members of his family at that address concerning such service on Hill. Thus it will be seen that in addition to the discrepancy between the appellant Hill's and Davey's affidavits as to whether the first name of appellant's old friend Davey was John or Fred, there was also a straight out conflict between the Davey affidavit and the deputy sheriff's testimony as to whether the latter had called at Davey's home at all. There was no affidavit from Mrs. Davie, the person whom the deputy sheriff testified he had met there.

The affidavit of the attorney G. D. Long swore that he had talked to the witness Norman Cline before appellant's trial and endeavored

to persuade Cline to tell the truth, in the belief that such testimony would exculpate appellant. Cline said he would refuse to answer any question which might incriminate him. After appellant's trial Cline entered a plea of guilty; and then made the affidavit which was filed in connection with appellant's motion for new trial.

Cline was used as a witness by appellant at the latter's trial. He testified he borrowed appellant's truck about 9:30 the night of the larceny. The truck was the one in which the stolen cow was being transported when the officers apprehended Cline and a man named Carter about three hours later. Two of the arresting officers and a man named Morgan testified appellant also was in the thieving party but was not immediately arrested and left. But at appellant's trial Cline refused to give the details of his movements after he borrowed appellant's truck at the latter's home, on the ground that the testimony would incriminate him. His own case was then pending and his trial was to follow immediately after appellant's case. However, he did say that he and appellant were in the Oklahoma penitentiary together; that appellant did not go with him after he borrowed appellant's truck at the latter's home the evening of the larceny; and that he told appellant he wanted the truck to use in an appointment he had with a girl friend

In his affidavit filed after appellant's trial Cline stated he and a man named Carter were the ones who stole the cow in question; and that they were the only two persons involved in the larceny except the State's witness Morgan. The affidavit recited that Cline told appellant he wanted to borrow the truck for the other purpose stated (date with a girl friend) ; that appellant did not go with him; and that so far as he knew appellant was entirely ignorant of the contemplated larceny. He said he refused to "tell the whole story to clear Kimbrough" because he was afraid of convicting himself. But after appellant's trial, and while the jury was still out, he learned that the other thief, Carter, had confessed, so he decided to plead guilty.

It is agreed by the parties, and is the law, that the granting or refusal of a continuance rests largely within the discretion of the trial court. Many cases on that point are cited in 9 West's Mo. Dig. "Criminal Law," sec. 594(1). We think the court did not abuse its discretion in this instance for several reasons. In the first place the application was insufficient in that it failed to allege the appellant believed the testimony of the absent witness to be true, as required by Sec. 4043, R. S. 1939, Mo. R. S. A., sec. 4043, State v. Dalton (Mo. Div. 2), 23 S. W. (2d) 1, 4. This requirement is more than formal when the application on its face raises a doubt as to the truth or accuracy of the missing testimony. Such questions are not for the jury but for the trial judge. Appellate courts are in no better position to pass on them than on questions involving the weight of the evidence when asked to overturn the trial court's ruling on a motion

for new trial. Motions for a continuance must show "evident good faith." They cannot be supported by hearsay affidavits when definite proof is available. State v. Gadwood, 342 Mo. 466, 480, 116 S. W. (2d) 42, 49 (1-4).

In this case there was conflict between appellant's affidavit and the missing witness Hill's affidavit on the one hand, and Davey's affidavit on the other, as to both Davey's Christian and surname, although he was an old friend of Hill and his mother. Davey's affidavit, given on September 13, three days after the trial began and two days after it was over, sweepingly stated no officer had made inquiry at his home of any member of his family concerning Jack Hill. But he did not say he was at home between September 5, when the subpoena was delivered to the Greene county sheriff and September 9 when a non-est return was made thereon. His statement was hearsay. The deputy sheriff was not asked while on the stands as to the day and hour when he made his trip to 871 Delmar street and talked to Mrs. Fred Davie. No affidavit from her was obtained, and no reason given for not doing so. It was not shown that appellant made any effort during the four days the subpoena was out, to ascertain if service had been obtained on the nomadic witness Hill, until just before the trial.

And as to the testimony of the witness Cline. Though both he and appellant were charged with the theft of the cow, it was by separate informations. He was a competent witness. State v. Morefield, 342 Mo. 1059, 1065(5), 119 S. W. (2d) 315, 317(5). He would have been even if he had been promised immunity. State v. White (Mo. Div. 2), 126 S. W. (2d) 234, 235(2). But he testified he had received no promises and that he had "not been requested to do anything under any circumstances." All he was to do was to "stand trial." And beyond that, he was used as a witness by the appellant, not by the State; and his testimony was favorable to the appellant. He said he borrowed appellant's truck for a purpose not connected with the larceny, and that appellant did not go with him on the trip when the cow was stolen. What he added to that testimony in his affidavit was that he and two other men, Carter and the State's witness Morgan, were the only parties involved; and that appellant was ignorant of the contemplated larceny so far as he knew. Nothing in his testimony at the trial as a witness implicated appellant. On all these stated facts, under the decisions cited, we think there was no error in overruling the application for continuance.

Judgment affirmed. All concur.