STATE of Missouri, Respondent,

v.

Ray Leo BAUGH, Appellant.

No. 46657.

Supreme Court of Missouri,

En Banc.

May 11, 1959.

C. Arthur Anderson, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Robert T. Donnelly, Special Asst. Atty. Gen., for respondent.

LEEDY, Judge.

Appellant was charged by amended information in the Circuit Court of the City of St. Louis with statutory rape. The information further alleged, under our habitual criminal statutes (§§ 556.280, 556.290), his prior conviction of the crime of rape in Madison County, Illinois; that he was duly sentenced thereunder to a term of five years' imprisonment in the Illinois penitentiary, and his discharge therefrom upon compliance with said sentence. Upon a trial the jury found him guilty of rape, and by its verdict further found that he had previously been convicted of a felony, and fixed his punishment at life imprisonment. On appeal the case was first heard in Division II, where an opinion was prepared, but it was not adopted because of diversity of opinion as to the disposition made of one point. The division, on its own motion, then transferred the case to the court en banc, where it has been again argued and submitted. We adopt portions of the opinion prepared in division, as follows:

"Appellant's counsel has briefed two principal assignments of error: one, that the trial court should have sustained his motions for judgment of acquittal, and, two, that the court erred in admitting in evidence and submitting to the jury the records concerning a prior conviction in Illinois. It is contended that the motions for judgment of acquittal should have been sustained for two reasons, one, because the uncorroborated testimony of the prosecutrix was so contradictory and in conflict with 'physical facts and surroundings' and other testimony that it was insufficient to sustain a conviction, and, two, because the age of the prosecutrix 'was not proven by competent and sufficient evidence.'

"On two occasions, each of a week or ten days' duration, the prosecutrix, Mildred, lived with and worked for the Baughs as a baby sitter and helped with the housework. The Baughs lived at 1209 Lami Street in a three-room apartment, the three back rooms of a second-story residence. The apartment consisted of a bedroom, a living room, kitchen and bathroom. The Baughs and their year-old baby slept in the bedroom and Mildred slept on a roll-away bed in the living room. On June 27, 1957, Mr. Baugh, his wife, Mildred, and the baby went to Story's Tavern, Mildred says at 5:30 and Mrs. Baugh says after 8, and stayed until 11:30 o'clock. Mrs. Baugh and Mildred drank cokes and Mr. Baugh, according to his wife, drank one or two beers. Mrs. Baugh says that upon returning home Mildred went to bed in the living room on the roll-away bed, that her husband ate a sandwich and went to bed and almost immediately to sleep on the double bed in the bedroom. Mrs. Baugh was expecting another

baby and says that she had heartburn and could not sleep and that, after sitting on the edge of their bed until 1:30, she took an Alka-Seltzer and that she was awake until 4 o'clock when she gave the baby his bottle. Shortly after 4 o'clock Mrs. Baugh went to sleep and from that hour until she got up about 8:30 and awakened her husband and Mildred she did not hear anyone scream and there was no noise or disturbance of any kind in the apartment.

■■ "But Mildred says that after they got home about 11:30 Mrs. Baugh and the baby went to bed in the bedroom and almost immediately to sleep, that Mr. Baugh sat in the kitchen eating. Mildred says that she went to bed and to sleep in her shorts and a blouse. About 2:30 in the morning she was awakened by Mr. Baugh who had removed her shorts and unfastened her blouse, that he was in bed with her, apparently naked, that she 'hollered' and he put his hand over her mouth, held her throat and told her to keep quiet. She then testified, positively and unequivocally, that he consummated an act of sexual intercourse, including penetration, with her. Obviously, her testimony as to the act and fact of sexual intercourse was not contradictory and even though uncorroborated was sufficient to support a finding of every essential element of the offense. State v. Wade, 306 Mo. 457, 268 S.W. 52. There is no absolute necessity for corroboration in statutory rape cases unless the testimony of the prosecutrix is contradictory, in conflict with physical facts, surrounding circumstances and 'common experience,' thereby rendering the testimony improbable and creating serious doubt as to its truth and probative force. State v. Burton, 355 Mo. 792, 795, 198 S.W.2d 19, 20; State v. Wood, 355 Mo. 1008, 1012, 199 S.W.2d 396, 398.

■■■ "The fact that on the next day, Wednesday, Mildred rode with the Baughs to Centralia, Illinois, where Mr. Baugh resumed his duties as a truck driver, returned to the Baugh residence with Mrs. Baugh, where she remained until Friday, and throughout the time, admittedly, did not report the fact of the occurrence to Mrs. Baugh, or to Mrs. Baugh's mother on Thursday, or to her mother until her mother came for her on Friday, may have some bearing on the credibility of her testimony but her failure to sooner report the occurrence does not cast such doubt as to destroy or render inconsistent her testimony as to the principal fact. State v. Ball, Mo., 133 S.W.2d 414, 415. The fact that Mrs. Baugh was in a bedroom but twelve or fifteen feet away, there being no door between the two rooms, and heard no 'hollering' does not of itself establish that Mildred's testimony is entirely improbable or necessarily contrary to physical facts or 'common experience.' A doctor examined Mildred five days after the occurrence but the fact that he did not find 'any evidence of intercourse' does not necessarily conflict with or destroy Mildred's positive testimony that there was an act of intercourse. The doctor did find abrasions in the vicinity of her genitals and a scratch on the outer margin of her vagina. It may only be said that the doctor's testimony is not 'physical evidence' so in conflict with Mildred's testimony as to destroy its probative force or to cast serious doubt on its trustworthiness. State v. Palmer, Mo., 306 S.W.2d 441; State v. Hamilton, 304 Mo. 19, 263 S.W. 127.

■ "Mildred testified that she was born in Ellington, Reynolds County, November 3, 1942, and, at the trial on October 15, 1957, said that she was fourteen years old. There was no other testimony as to her age, consequently there was no conflict in the evidence on the subject (State v. Weber, 272 Mo. 475, 481, 199 S.W. 147, 148), and, there being no conflict, Mildred's testimony was sufficient to prove the fact of her age, under sixteen, on June 26, 1957, the date of the offense. 44 Am.Jur., Sec. 68, p. 941; 75 C.J.S. [Rape] § 58, p. 531; State v. Hightower, Mo., 231 S.W. 566; State v. Shobe, Mo., 268 S.W. 81."

From the foregoing it follows that the trial court did not err in overruling de-

fendant's motions for judgment of acquittal on either of the grounds here urged.

On habitual criminal aspect of the charge, the state was permitted, over the defendant's objection, to introduce in evidence State's Exhibits 1 and 2. Exhibit 1 is a duly authenticated copy of a judgment of the Circuit Court of Madison County, Illinois, in a case entitled "The People of the State of Illinois versus Roy Lee Baugh," No. 6159, entered on April 30, 1945, adjudging the defendant therein guilty of rape on the verdict of the jury, and sentencing him to the Illinois State Penitentiary for a term of five years. Exhibit 2 is is a duly authenticated copy of the prison record of "Roy Leo Baugh" as a convict in the Illinois State Penitentiary under the judgment and sentence shown by Exhibit 1. The introduction of these exhibits forms the basis of defendant's final point, namely, that the trial court erred in admitting the foregoing documents for reasons, as preserved in the motion for new trial, as follows:

"5. The Court erred in permitting the introduction into evidence of a purported authenticated copy of a prior conviction of a felony of one Roy Baugh, when there was a discrepancy in the first name of the person named in said copy and the name of the defendant herein, and the defendant was not identified further as being the same person named in said copy regarding a prior conviction.

"6. The Court erred in permitting the Circuit Attorney to read into the record a copy of a prior conviction for a felony of one Roy Baugh, when the defendant herein was named Ray Leo Baugh, and there was no testimony to identify the defendant herein as Roy Baugh.

"7. The Court erred in permitting evidence of a prior conviction to be introduced in evidence and read to the jury when a prior conviction of this defendant had not properly been proved by the plaintiff, and defendant was prejudiced by said admission of erroneous evidence."

In treating the questions thus raised, portions of the opinion prepared in division will be utilized, but without resort to quotation marks.

Defendant was variously referred to as "Ray," "Raymond," and "Mr. Baugh," and, when mentioned in connection with his wife, as "the Baughs." However, we find two instances where the name "Roy" was used in the evidence in referring to him. The first of these was in the early stages of the trial when, for the purpose of identifying defendant, the prosecuting witness was asked, "Do you know a couple, Jean and Roy Baugh?" She replied in the affirmative. Defendant did not testify, but when his wife was called the following questions were put to her, and she made answers thereto (in relation to defendant's name), as follows:

"Q. You are the wife of Raymond Baugh, is that right? A. Or Ray Baugh, yes.

"Q. Ray Baugh? Ever known him as Roy Baugh? A. Roy, Ray —."

She stated her husband's age to be forty-six, and hers twenty-two. The following occurred on her cross-examination:

"Q. Do you know whether or not your husband was convicted of rape in 1945? A. No, I don't know nothing about it.

"Q. Do you know that now? A. I do now, I heard about it."

Sergeant Ahrens, a police officer of the City of St. Louis, testified that in connection with the investigation of the complaint of prosecutrix he was present when the defendant was questioned. The relevant portion of the sergeant's testimony on the point under scrutiny follows:

"Q. Sergeant, at the police station, when Raymond Baugh was questioned in your presence, was he questioned at all concerning any prior record of convictions of felonies? A. Yes, sir,

"Q. Did he make any statement at that time? A. Yes, sir. He stated in April, 1945, he received a five-year sentence over in Edwardsville, Illinois, for rape.

"Q. Did he say whether or not he went to the penitentiary for that offense? A. No, he did not.

\* \* \* \* \* \*

### Cross-Examination

"Q. Sergeant, this defendant told you about the other rape charge, didn't he? A. Yes.

"Q. Volunteered that information that he had been charged over in Illinois, is that right, in 1945? A. Yes.

"Q. And that is how you knew it? A. Yes.

\* \* \* \* \* \*

"Q. What name did this man give you when he was arrested? A. Ray Baugh.

"Q. Raymond Baugh? A. Raymond Baugh, yes, sir.

\* \* \* \* \* \*

### Redirect Examination

"Q. Let me ask you one further question. I want to show you what for the purposes of identification is marked as State's Exhibit No. 1. Would you tell us the date that is indicated on that writing, please? A. Sir?

"Q. Would you tell us the date indicated of the sentence covered by that writing? A. On the 30th day of April, 1945.

"Q. Is that the same date that Ray Baugh said he was sentenced over in Edwardsville? A. Same month, and the same year."

The witness further stated that defendant was not questioned about whether he was the same man "as the name on the piece of paper" [Exhibits 1 and 2], this no doubt for the obvious reason that there was no pretense that the officers then had copies of the Illinois judgment and prison record. The date of the certification of such records was not until shortly before the trial. It is true the witness disclaimed having personal knowledge as to whether "this Roy Leo Baugh and Raymond Baugh is the same person."

In addition to the sergeant's testimony as to defendant's admission, as above set forth, Exhibit 2, the prison record, contains a description of the person imprisoned under the Madison County, Illinois, judgment of April 30, as to age, nativity, height, color of hair and eyes, complexion, weight, and other data, as follows: "Register No. 23919. Name, Roy Leo Baugh, age 34 in 1946, nativity, Springfield, Illinois, trade, auto mechanic. Height five feet five three-quarter inches. Hair, chestnut, mostly gray, eyes blue, complexion medium light ruddy. Weight 158 pounds. Father's name, Elmer Baugh, mother, Emma Newcomer Baugh. Offense, rape. Sentence, five years. County, Madison County Circuit Court. Date of sentence, April 30, 1945. Term of Court, March, 1945. When received, received at Illinois State Penitentiary, Menard, 2/13/46. Transferred to Illinois State Penitentiary, Joliet, 7/2/46. Expiration of sentence, November 12, 1949. Discharged November 12, 1949."

Our habitual criminal statutes do not prescribe how proof of a former conviction shall be made; the record is the best evidence, "plus evidence identifying the accused as the convict." State v. Kimbrough, 350 Mo. 609, 616, 166 S.W.2d 1077, 1081. It cannot be doubted that a defendant's prior conviction may be shown by his admission of the fact to an arresting or investigating officer. State v. Lawrence, Mo., 280 S.W.2d 842, 847; State v. Hannon, Mo., 204 S.W.2d 915, 917. See, also, State v. Kimbrough, supra. "An admission, by one accused of crime, of his identity with a person who was previously convicted as

alleged has been held in many instances to obviate the necessity for further proof thereof." 11 A.L.R.2d loc. cit. 875.

 Mere identity of names is prima facie sufficient (State v. Kimbrough, supra), but here there is only partial, but not complete identity of names. It is to be noted that ground five of the motion for new trial complains only of the deficiency as regards the first name—Roy instead of Ray. No point is made of the fact that whereas the judgment describes Roy Le*e* Baugh, the prison record is in the name of Roy Le*o* Baugh. This practically amounts to a tacit concession that the middle name in each instance is Leo. The question is then reduced to the proposition that there is but the difference of a single letter ("a" or "o", as the case may be) in the first name of the person previously convicted and the accused in the case at bar. We do not mean to say that this difference would not be fatal, if the rule of identity of names alone were relied on, but such is not our case. In addition to defendant's admission, which fixed the time and place of his conviction, the offense and punishment assessed at that shown in the state's exhibits, we also have the detailed description of physical characteristics of the person previously convicted. Indeed the prosecutor in his opening argument read the description of the Illinois convict as it appeared in the state's Exhibit 2, and argued most vehemently that "it (the description) leaves no doubt as to the man's prior record, and his guilt of the same type of offense." No challenge of, nor objection to this argument was interposed. Had that description not tallied with the physical characteristics of defendant, the argument would have been self-destructive and devastating to the state's theory. We may safely assume, then, that such description did in fact fit defendant, and this disposes of the further objection that "there was no evidence to substantiate the physical characteristics mentioned on the exhibit with the physical characteristics of the defendant."

We agree with the trial court that upon the showing made, as hereinabove outlined, it was a question of fact for the determination of the jury as to whether the defendant was the same person as the one referred to in the documents complained of, and that such documents were admissible.

The judgment is affirmed.

All concur.