The State v. Walter Wall, Appellant.—96 S. W. (2d) 36.

Division Two, June 30, 1936.

*E. L. McClintock* for appellant.

112

*Roy McKittrick*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted of burglary and larceny in the Circuit Court of Cape Girardeau County, Missouri, and sentenced to two years' imprisonment in the penitentiary for each offense. Being unsuccessful in obtaining a new trial he appealed.

Appellant and one Babe Looney were jointly charged with the crime. Looney entered a plea of guilty and was sentenced to serve a term in the penitentiary. Appellant entered a plea of not guilty. At the trial Looney testified for appellant.

The facts, as disclosed by the evidence, were as follows: On Sunday night, May 12, 1935, at about twelve o'clock, Looney entered a restaurant by breaking the glass of the back door thereof with a rock. Looney so testified and also admitted that he took $62.50 in cash and placed it in his pockets. About that time he was arrested by a police officer. The police officer testified that he heard a crash of glass and ran to an alley in the direction of where he thought the crash had occurred; that as he entered the alley he heard someone running; that by the use of a flashlight he saw appellant running into the alley from the rear of the restaurant. At the command of the officer appellant halted. The officer testified the following conversation occurred:

"Q. Was anything said by him or you at that time? A. I asked him what was going on back there; he said, 'Babe and I were back here taking a drink and Babe fell through a glass.'

"Q. Did you see Babe or did he tell you where Babe was? A. I says, 'Where is Babe at now;' he said, 'He run down the alley.'

"Q. Had you seen Babe run down the alley? A. No, sir.

"Q. How much time had elapsed between the time you heard the crash and saw Wall? A. It wasn't only as fast as I could run across the street and down the alley.

"Q. What did you do after this conversation? A. I marched him on back; says, 'We'll go back and see what happened;' marched him back and throwed my light in the rear of Dueker's and saw the back door broken out—the glass."

The police officer further testified:

"Q. And when you heard the glass crash you ran? A. Yes, sir.

"Q. I will ask you to tell the jury if you weren't expecting to see someone running from the back door? A. Yes, sir, they could hear me running.

"Q. You were expecting to see someone running? A. Yes, sir.

"Q. You would make some noise coming through the alley? A. Yes, sir.

"Q. Did you hear this man or a man running after the crash of glass? A. Not until after I got in the alley.

"Q. You heard the crash before you got in the alley? A. Yes, sir."

The officer, by means of his flashlight, discovered Babe Looney in the restaurant in the back of the bar. Looney and appellant had known each other for some time. Looney had worked at the restaurant on the Saturday previous for a period of a few hours and had learned the location of the cash. They testified that their only purpose of going into the alley was to take a drink of whiskey from a bottle in Looney's possession; that they met by chance just before entering the alley. Looney testified that he had not mentioned to appellant that he intended to burglarize the restaurant. In fact he stated that the idea first came to his mind at the time he was taking a drink in the alley; that after taking a drink he left appellant and proceeded to break the glass; that appellant walked toward the street and did not know of Looney's intentions. Appellant denied having taken any part in the crime and testified that after he had taken a drink he handed the bottle to Looney and told him he was going home; that shortly thereafter he heard the crash; that he then saw the officer coming and waited for him. Appellant's version of the conversation had with the police officer was as follows:

"A. He said, 'What's all this commotion?' I said, 'I don't know

unless Babe fell through a window, he staggered off that way, drunk.' He said, 'Well, come with me, we will look it over.' He flashed the light around and finally seen a door with the glass broken out, and he said, 'He surely didn't fall through that,' and looked in and Babe was inside.''

The restaurant was located in the second storeroom from the alley. The police officer testified that appellant came from behind the buildings and was running away from the direction of the restaurant. When appellant was discovered he was only about sixty feet from the broken door.

■ Appellant in a number of assignments of error presented the question of the sufficiency of the evidence to sustain the verdict of guilty. In a criminal case a jury must be convinced of the defendant's guilt beyond a reasonable doubt before it is authorized to convict. The jury was so instructed in this case. A mere possibility of a defendant's innocence will not justify an acquittal. It is our opinion that under the evidence there may have been a possibility of appellant's innocence but it was a mere possibility based upon conjecture and highly improbable. All the evidence introduced by the State pointed to the guilt of appellant and was inconsistent with any reasonable theory of his innocence. Even the evidence of appellant and Looney, when properly analyzed, was more consistent with the guilt of appellant than with his innocence. Looney had obtained knowledge of the location of the cash a day before the crime was committed. Both Looney and appellant, so the evidence disclosed, were in need. That the two met by accident, about midnight, on the street near the restaurant, if true, was certainly a coincidence. Then strange to say they walked down the alley to take a drink within a few feet of the place burglarized. Looney testified that up to this time he had not thought of committing the crime; that the idea came to him suddenly, and leaving appellant he went to the restaurant and broke the glass door with a rock. The evidence of the officer, that he saw appellant running away from, and not toward the location of the broken door is inconsistent with appellant's evidence that he waited for the officer and was not running. Appellant's statements made hurriedly in response to the questions of the officer showed he had knowledge of what had occurred. If appellant and Looney had separated for the night, what gave appellant the idea that it was Looney who had fallen through a glass, and why should appellant run away from the scene? Was it perhaps because he heard the footsteps of the officer rapidly approaching? Again, why did appellant inform the officer that Looney had run down the alley after falling through the glass? This showed a deliberate intent to deceive the officer. It also showed that appellant knew what had transpired. The jury probably concluded, and we think rightly so, that Looney, being caught in the act,

entered a plea of guilty and then by his testimony attempted to protect his accomplice, the appellant. The explanation made by both appellant and Looney of the occurrence did not bear the earmarks of truth and was inconsistent with innocence. The evidence justified the conclusion that appellant and Looney went into the alley with the avowed purpose of stealing the cash located in the restaurant. We are of the opinion that the evidence was sufficient to support the verdict. It was sufficient to meet the requirement of the rule of law on circumstantial evidence so often quoted in cases and referred to in the case of State v. Freyer, 330 Mo. 62, 48 S. W. (2d) 894, l. c. 899 (8), cited by appellant as follows:

"To convict on circumstantial evidence alone, the circumstances must be consistent with each other and with the hypothesis of the defendant's guilt, and inconsistent with every other reasonable hypothesis, including that of innocence."

The facts proven were inconsistent with any reasonable theory of appellant's innocence.

Appellant complained of instructions 1 and 2, given by the court. Instruction No. 1 required the jury to find, before authorizing a conviction, all the necessary elements of burglary as well as of larceny. The instruction required a separate finding on each charge and authorized a conviction or acquittal of one or both of the charges. Complaint is made that the instruction did not inform the jury under what circumstances appellant could be found guilty, when in fact the actual breaking and taking of the property was done by Looney. Instruction No. 2 fully covered this point. By this instruction the court informed the jury that if Babe Looney broke into the building and if appellant was present, aiding, assisting, abetting, consenting, and cooperating with Looney then the jury was authorized in finding him guilty. The instruction further informed the jury that if Looney did such breaking of his own accord and unconnected with appellant and that appellant did not aid, etc., in such breaking then the jury should find him not guilty. We think the instruction proper. If appellant aided and abetted in the breaking he was guilty of burglary and larceny. Looney, of course, took the cash he found in the building. It was not necessary that appellant actually enter the building. The act of Looney in taking the money, under the facts proven, was the act of appellant. The fact that appellant fled because an officer was approaching was not such an abandonment of the crime as would absolve him of being guilty of the larceny which was then in progress of being committed by his accomplice, Looney.

Appellant complained of the action of the trial court in refusing to permit jurors on *voir dire* examination to answer certain questions propounded to them by appellant's counsel, of which the following is a sample:

116

"Q. If you should be selected to try the case, would you make your own decision in the case as to whether the man is innocent or guilty? That doesn't mean you wouldn't talk over and discuss the evidence, but when you have heard and discussed the evidence in the jury room, would you make your own decision as to whether the man is innocent or guilty or let somebody else on the jury make it for you?"

It was ruled in State v. Tally, 22 S. W. (2d) 787, l. c. 788 (3, 4) that such questions were improper. If it is not proper for jurors, who are in disagreement after taking their first ballot, to persuade each other in reaching a verdict by discussing the evidence and the instructions, then a jury should be limited to the taking of one ballot. The very purpose of keeping a jury together in a jury room, when deliberating upon a verdict, is that by reasoning with each other they may come to an agreement. Answers to the questions asked would of necessity have been speculation on what might influence the jurors' verdict. It may be that a juror, after being persuaded by the argument of an attorney, would change his mind if another juror in the jury room pointed out to him certain falacies in the argument of counsel. Such things are permitted and are proper. So that if jurors follow their oath and honestly render a verdict according to the instructions and the evidence it matters not how they reach that conclusion, whether they be influenced by the argument of counsel in presenting his case, or by the argument of his fellow jurors.

Finding no reversible error in the record the judgment is affirmed. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.