## Richmond

### Oras Carlyle Smith v. Commonwealth of Virginia.

October 10, 1949.

Record No. 3578.

Present, Gregory, Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

12.

The opinion states the case.

*Herman A. Sacks* and *Stanley E. Sacks*, for the plaintiff in error.

*J. Lindsay Almond, Jr., Attorney General*, and *Ballard Baker, Assistant Attorney General*, for the Commonwealth.

EGGLESTON, J., delivered the opinion of the court.

Oras Carlyle Smith, the plaintiff in error, was indicted for "unlawfully and feloniously" having "in his possession" "a check-writing machine, with intent to use and cause and permit" it "to be used in forging and false making of checks to the prejudice of another's right," in violation of Code, sec. 4488. Upon a plea of not guilty he was convicted by a jury and his punishment fixed at two years in the penitentiary. To review the judgment entered on the verdict the present writ has been allowed.

On Saturday afternoon, October 23, 1948, Smith telephoned A. M. Rubinstein, at the latter's home in the city of Norfolk, relative to purchasing a check-writing machine.

Although Rubinstein's place of business, the Norfolk Office Equipment Company, was closed for the day, he agreed to meet Smith at the store for the purpose of making the sale. During the telephone conversation Rubinstein's suspicions of Smith's intentions had been aroused. He notified the police department of his engagement with Smith and a detective was sent to Rubinstein's office and was there when the sale was consummated.

Immediately after the sale was made and the check-writing machine delivered to Smith, he was arrested. He had in his possession thirty-nine blank checks, serially numbered, bearing the printed name of "Westbrook Elevator Mfg. Co., Danville, Virginia," and directed to the First National Bank of that city. Some of the checks bore what purported to be the authorized signature of an official of the Westbrook Company. Each of the checks was incomplete as to the date, amount, and name of payee. These blank checks were not the *bona fide* checks of the Westbrook Company, and the purported signature was in fact a forgery. Pertinent to his unlawful intent, the Commonwealth proved that on the previous day Smith had cashed in Petersburg a forged check of the Westbrook Company for $73.76.

The check-writing machine was such as is commonly employed to impress on and into the face of a check the amount thereof, for example, "Exactly Ninety Dollars Twenty Cents".

Code, sec. 4488, reads thus: *"Making or having in possession anything designed for forging any writing; how punished.*—If any person engrave, stamp, or cast, or otherwise make or mend, any plate, block, press, or other thing, adapted and designed for the forging and false making of any writing or other thing, the forging or false making whereof is punishable by this chapter;[1] or if such person have in possession any such plate, block, press, or other thing, with intent to use, or cause or permit it to be used, in forging or false mak-

---

[1] The forging of a check is punishable under Code, section 4489, as amended, which is found in the same chapter as section 4488.

ing any such writing or other thing, he shall be confined in the penitentiary not less than two nor more than ten years."

The sole assignment of error is that the lower court should have set aside the verdict on the ground that it was contrary to the law and the evidence and without evidence to support it.

The evidence which we have recited is sufficient to warrant the jury in finding that the accused had the machine in his possession "with intent to use, or cause or permit it to be used," in writing or filling in the amounts of the checks. Such writing or filling in, with evil intent, would, of course, constitute a material step in the act of "forging or false making" of such an instrument.

But it is earnestly contended that proof of such evil intent is not sufficient to sustain the conviction here, because, it is said, a check-writing machine, such as the plaintiff in error had in his possession at the time of his arrest, is not within the condemnation of the statute, in that it is not *adapted and designed* for the forging and false making of any writing" (italics supplied) but on the contrary is "adapted and designed" for a legitimate purpose or use.

We cannot agree with this narrow interpretation of the statute. The section covers and provides punishment for two offenses in the alternative: (1) The making or mending of "any plate, block, press, or other thing, adapted and designed for the forging and false making of any writing," which is "punishable by this chapter" of the Code; or (2) the possession of "any such plate, block, press, or other thing, with intent to use, or cause or permit it to be used, in forging or false making any such writing."

Plainly, "any such plate, block, press, or other thing," the possession of which is condemned by the second portion of the section, is such a device or instrumentality the making or mending of which is condemned by the first portion— that is, such as is "adapted and designed for the forging and false making of any writing."

The crux of the case, then, is whether the check-writing

machine in question is "adapted and designed for the forging and false making of any writing" within the meaning of the section. We think it is.

"Adapted" means "capable of being used; fit or suitable." 1 C. J. S., p. 1452. "Designed" means "appropriate, fit, prepared, or suitable; also adapted, designated, or intended." 26 C. J. S., p. 1238. Sometimes when an instrumentality is spoken of as being "designed," reference is had to the purpose for which it was planned or constructed. 26 C. J. S., p. 1238.

Manifestly, the machine with which we are concerned was "adapted" for completing or carrying out the forgery of the checks which the accused had in his possession. Moreover, as has been pointed out, the evidence was sufficient to warrant the finding that it was "designed"—that is, "intended"—to be used by the accused for that purpose. It was thus established by the evidence to have been both "adapted and designed" by the accused for the unlawful purpose which is condemned in the statute.

The plaintiff in error argues that in order for him to be convicted of the unlawful possession of the machine, it must be of such character that one who makes or mends it is punishable under the first portion of the section. Undoubtedly, we think, one who makes or mends the machine is punishable if the evidence shows that this was done with the design, purpose or intent that it be used for forgery. But proof of such evil intent on the part of one who makes or mends the machine is not necessary to sustain a conviction of unlawful possession of the instrumentality in the hands of another. What the statute condemns is either the making or mending or the possession of the instrumentality for an evil or unlawful purpose. It is immaterial, then, to say that it was originally planned, constructed and intended to be used for a lawful purpose.

A similar interpretation has been placed by the courts on statutes prescribing punishment for the possession of burglars' tools with criminal intent. The great weight of authority

is to the effect that it is not necessary that such tools or implements be originally constructed or intended for an unlawful use. "If they are suitable for the purpose of breaking and entering burglariously, it is wholly immaterial that they were also designed and adapted for honest and lawful uses." 9 Am. Jur., Burglary, sec. 86, p. 282. See also, 12 C. J. S., Burglary, sec. 69, p. 754; Anno., 103 A. L. R. 1322, collecting numerous cases on the subject. ·

In *State* v. *Hefflin*, 338 Mo. 236, 89 S. W. (2d) 938, 103 A. L. R. 1301, a conviction for possession with unlawful intent of a crowbar or jimmy was sustained. There the statute provided that: "Any person who makes, mends, designs or sets up, or who has in his custody or concealed about his person any tool, * * * instrument, or other mechanical device, whatsoever, adapted, designed, or commonly used for breaking into any vault, safe, * * * shall be guilty of a felony, * * *." In the course of the opinion the court said (89 S. W. (2d), p. 944):

"* * * Appellant's theory seems to be that in order to come within the statute such tools must be especially, if not exclusively, designed for use by burglars.

"The overwhelming weight of authority is against appellant's contention. A leading case on the subject is *Commonwealth* v. *Tivnon*, 8 Gray (74 Mass.) 375, 380, 69 Am. Dec. 248, 251, where it was said: 'Nor do we think it necessary, in order to create the offence which the statute is designed to punish, that it should appear that the tools or implements were originally made or intended for an unlawful use. If they are suitable for the purpose, so that they can be used to break and enter burglariously, it is wholly immaterial that they were also designed and adapted for honest and lawful uses. * * *' "

It will be observed that in that case the statute, like the one before us, condemns both the person who "makes, mends, designs or sets up" the tool, instrument, or device, and one who has it in his possession, with evil intent.

In *Prather* v. *State*, 191 Ark. 903, 908, 88 S. W. (2d) 851,

a conviction of unlawful possession of burglars' tools under a similar statute and on like reasoning was sustained. See also, *People v. Morgan*, 59 Hun 619, 13 N. Y. S. 448, 35 N. Y. St. Rep. 643; *State v. Fitzpatrick*, 141 Wash. 638, 251 P. 875.

As was pertinently said in *State v. Widenski*, 50 R. I. 148, 146 A. 407, 408: "If the tools were originally intended for an innocent purpose, intent becomes the important element in an indictment" for violation of a statute prohibiting the possession of burglars' tools.

The same reasoning applies to the interpretation of the statute now before us.

In *People v. Dorrington*, 221 Mich. 571, 191 N. W. 831, relied on by the plaintiff in error, a conviction of unlawful possession of burglars' tools was reversed on the ground that there was no showing of unlawful intent.

██ It is beside the point, too, to say that the statute is of long standing,[2] and that at the time of its enactment a machine of this character was unknown. It is an elementary rule of statutory construction that, "The language of a statute may be so broad, and its object so general, as to reach conditions not coming into existence until a long time after its enactment." 50 Am. Jur., Statutes, sec. 237, p. 225. See also, *Great Atlantic & Pacific Tea Co. v. Richmond*, 183 Va. 931, 950, 33 S. E. (2d) 795, 803.

It is further argued that the conviction of the plaintiff in error cannot stand, because, it is said, the statute condemns the possession of the instrumentality in the hands only of "such person" who has engraved, stamped, cast, or otherwise made or mended it, and that there is no showing that he had done so.

██ There is no merit in this contention. To adopt this interpretation would destroy or make meaningless the second portion of the section. If the statute was designed to punish only the person who made or mended the instrumentality,

---

[2] See Code of 1849, ch. 193, p. 733, section 4.

there would be no point in providing a like punishment for possession of it by him.

In our opinion, "such person" in the second portion of the section refers to "any person" in the first portion thereof. This view is confirmed by an examination of the history of the statute.

In the Code of 1849, ch. 193, p. 733, sec. 4, this section read: "If a *free* person engrave, stamp or cast, * * *, or if *such* person have in his possession * * *." (Italics supplied.) The language is the same in the Code of 1860, ch. 193, p. 797, sec. 4. Thus, "such person" in the second portion of the section referred to "a free person" as written in the first portion.

In the Code of 1873, ch. 189, p. 1200, sec. 4, the words "a free person" were changed to read, "a person." In the Code of 1887, sec. 3736, "a person" was changed to the present reading, "any person." Consequently, "such person" in the second portion of the section now refers to "any person" in the same manner in which it previously referred to "a free person."

The judgment complained of is

*Affirmed.*