**STATE of Missouri, Respondent,**

v.

**Leo LAWRENCE, Appellant.**

No. 44364.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Lauf, Bond & Dominique, John O. Bond, and P. Pierre Dominique, Jefferson City, for appellant.

John M. Dalton, Atty. Gen., Winston Cook, Asst. Atty. Gen., for respondent.

DALTON, Presiding Judge.

Defendant was charged and convicted of the crime of larceny from the person, where the value of the property stolen was in excess of $30, and under the habitual criminal act. He was sentenced to a term of seven years in the state penitentiary. See Sections 560.190 and 556.280 (all references are to RSMo 1949, V.A.M.S.) The prior conviction alleged and shown was for the offense of breaking jail, a felony, and the term assessed and served was two years in the state penitentiary. It does not appear whether this charge was under Section 557.380 or Section 557.390.

Defendant has appealed and contends that the court erred (1) in refusing to direct a verdict of acquittal as requested at the close of the State's evidence; (2) in permitting the introduction of certain evidence as hereinafter set out; and (3) in

giving Instruction No. 1 on behalf of the State.

The State's evidence tended to show that one Joseph F. Lenz resided at 2318 South Broadway in the city of St. Louis and was employed at the Small Arms plant of the U. S. Defense Corporation. About 6:30 p. m., on Sunday, May 24, 1953, he went down to Bobby's Tavern at Broadway and St. George streets in said city, where he stood at the bar and had a beer with two of his friends. Later, he went to the back of the tavern and passed by a table where two men and a woman were seated. He did not know them, but he spoke saying: "Good evening" and they invited him to sit down. He sat down, visited with them and ordered two rounds of 3.2 beer. At no time while he was in the tavern or later that evening did he ask or obtain the name and address of any of these persons. It later appeared that they were Roy Ryterski, Leo Lawrence (defendant), and Nona Hardin. According to defendant's opening statement before the jury, the defendant was residing with Ryterski at 2033 Gasconade street and Ryterski was keeping company with Nona Hardin, who was a sister of defendant's wife.

After visiting in the tavern for an hour or so, Lenz suggested that they all go to the Royal American Carnival, All-American Shows, at Grand and Laclede. Lenz did not have a car, but Ryterski had one, and the party went out to the carnival in his car. Defendant drove the car on the way to the carnival. Lenz sat in the back seat with Nona, while Ryterski sat in the front seat with defendant. The car was a Plymouth, black sedan, 4 door. On cross-examination Lenz said that he didn't know anything about Nona being engaged to marry Ryterski; that he did not hear that matter discussed; and that she never said a word to him about getting married to anyone.

As the party proceeded toward the carnival they stopped at the Schott's Place, near the MacArthur Hotel, where Lenz bought eight bottles of beer and took them with him to the car. Lenz and Nona then each drank a beer. They reached the carnival about 8:30 p. m. and stayed there about an hour. Lenz paid the gate fee to the carnival, bought Nona some sandwiches and paid for her ride on one of the attractions. He had previously paid for all of the beer consumed by the party.

When Lenz went to Bobby's Tavern that Sunday evening he had $231 in money with him. Two hundred dollars was in a new brown wallet that had his name engraved on it. He had put the $200 in his wallet on Sunday morning after he returned from work and he carried the wallet in his left hip pocket. He had no occasion to open his wallet while in the tavern or at the carnival as he had $31 in loose change in his right trousers pocket and he used some of this change in paying the expenses of the party that evening.

Lenz and his companions left the carnival about 9:30 p. m. and went to Ryterski's car. Lenz again rode in the rear seat with Nona. She was the first person to get in the car and he got in and sat right beside her, to her right, with very little space between them. Defendant and Ryterski again sat in the front seat, but Lenz was unable to say who drove the car on the way back from the carnival.

Nona was wearing short slacks and, shortly after they started on the return trip, she told Lenz that she had had her right ankle broken and had just taken it out of the cast. She put her right leg up over his left knee and leg and asked him to rub her ankle. He leaned forward and started rubbing her ankle as the automobile was being driven along the street. About that time Lenz noticed that Nona was getting his billfold. She was taking it out of his left hip pocket with her right hand. She had pulled seven or eight inches away from him and had put her right hand in the left hip pocket of his trousers. He felt his billfold coming out of his pocket and he got a glimpse of it in Nona's hand as she was taking it away. At first he asked her what she was doing with his billfold and then he asked her to give it back to him. She did not do so and he then asked her what she had done with

it. At that time one of the men in the front seat said, "Why, you can't talk that way to that girl," and struck him in the head with a beer bottle. The bottle broke and cut Lenz on the face and head. Lenz had his head turned slightly and couldn't make out exactly who had hit him. While he was still "kind of stunned by the blow," the two men got out of the car and ran around and pulled him out, beat him up and left him lying on the sidewalk near 2840 Walnut street in the city of St. Louis. Both of the men struck him a number of times after he was outside the automobile and on the sidewalk. The car was then driven away. Lenz got up and staggered along the street, bleeding from his wounds, and some one called the police. Lenz testified that he had said nothing improper to Nona and had not asked her to go to a hotel with him. When asked, if he had not been thrown out of the automobile because of improper attention to Nona, he denied it, but further said "that must have been it; that must a been their idea of it."

Lenz lost his left house slipper in the car, his prescription-ground safety eye glasses, his billfold and the money therein and two buttons off of his shirt. The loose change he had in his right trousers pocket was not taken.

When the police arrived about 9:45 p. m., Lenz was taken to a hospital where he received treatment for his injuries. The police found parts of a broken beer bottle and glass in the street and, from a colored man, obtained the license number of the automobile from which Lenz had been ejected.

About 5 a. m. the following morning, May 25, 1953, the police located the automobile in question at 2033 Gasconade street, where Ryterski answered the door and said he lived there. It was a three room apartment and the police found defendant Lawrence asleep in the front room and Nona in a bed in the middle room. On inspection of the automobile, the police found Lenz's left house slipper on the rear floor, and also Lenz's glasses case, his prescription-ground safety eye glasses, a shirt button, beer bottles, and broken glass. Defendant was ar-

rested and taken to the Ninth Street Police Station where he stated that he had been with Ryterski and Nona the entire afternoon and evening of May 24 and up until he was arrested on May 25. Lenz reached the Ninth Street Police Station at 5:30 a. m. that day and identified the three, Ryterski, Nona and defendant, as the same people he was with the night before. Defendant, however, insisted that he had never seen Lenz until Lenz came to the police station that morning. He said Lenz was never in the automobile with him. Defendant also said that he had not been to any carnival on the prior evening. He was very uncooperative and for the most part refused to answer questions, but did insist that he had never seen Lenz before. No search was made of the premises where defendant was arrested. When searched at the police station after his arrest, defendant had less than one dollar in money on his person and when asked if he stole anything from Lenz, he answered that he had never seen Lenz previously. The automobile was owned by Ryterski.

Lenz saw and identified Ryterski's automobile at the police station that morning as the one in which he had been riding the night before. He recognized it as the same car and looked inside and saw a home-made quilt lying on the front seat, which he said had been at the same place the evening before.

The evidence further showed that on June 1, 1950, in the Circuit Court of Madison County, Missouri, defendant had entered a plea of guilty to the charge of breaking jail; that he had been sentenced to two years in the state penitentiary; and that he had been discharged under commutation of sentence by Governor Smith on September 10, 1951.

Defendant offered no evidence.

Did the court err in refusing to direct a verdict of acquittal? Appellant insists that there was no evidence that he took any money from Lenz, or aided or abetted in the taking of the same. He says there is no evidence that he knew Lenz's money was taken, or that he received any of the pro-

ceeds; that "there is not an unbroken chain of circumstances pointing to his guilt"; and that the conviction is based only on conjecture, suspicion and surmise.

Appellant also says "the evidence clearly shows that Nona Hardin was the one who was guilty of the theft." He insists that there was no showing that either of the men had knowledge of the theft of the pocketbook or knowingly participated therein; but says that the men became angry because of Lenz's conduct and accusations against Nona. Appellant further contends that Lenz's testimony recognizes that it must have been the men's idea that he was guilty of improper attention toward Nona; and that the evidence shows no more than that appellant helped subdue Lenz after the dispute in the car.

■ Appellant concedes that the record tends to show that Nona Hardin was the friend of Ryterski and a review of the transcript indicates that such was defendant's theory at the trial. The direct evidence clearly shows a theft by Nona Hardin of the billfold and money from the person of Lenz. Whether the appellant knowingly and intentionally aided, abetted and assisted in the theft rests upon the inferences to be drawn from all the direct evidence presented to the jury. Whether or not such inferences were to be drawn was a jury question and the State was not bound by the conclusion of the prosecuting witness concerning defendant's "idea", intent or purpose.

The evidence was such that the jury could find that the two men and the woman were seated in the back of Bobby's Tavern; that they invited Lenz, a total stranger, to sit at their table where they drank beer together; and that, when the parties started to the carnival, although Nona was the girl friend of Ryterski, she sat in the rear seat of the automobile with Lenz, the total stranger, while Ryterski sat in the front seat with appellant. The jury could find that all members of the party knew that Lenz had money on him, since he was paying all of the expenses. Further, the jury could infer and find that the occupants of the front seat,

heard and knew what was going on in the back seat of the same automobile, particularly so, since they acted so promptly and so vigorously when Lenz asked Nona what she was doing with his billfold, and when he asked her to give it back to him and when he finally asked what she had done with it. The jury could find that defendant, Ryterski and Nona were operating together; and that the invitation extended to the stranger (Lenz) was a part of a joint enterprise. The evidence further showed that the parties were still together in the same house the following morning. While appellant admitted he had been with Nona and Ryterski all of the previous evening, he denied that he had even seen Lenz, or had been in the same automobile, or had even been to the carnival with Lenz and the others.

■ In testing the sufficiency of evidence in a criminal prosecution, on motion for directed verdict of acquittal, the facts should be considered in the light most favorable to the State. State v. Schrum, 347 Mo. 1060, 152 S.W.2d 17. We think a review of the evidence demonstrates that the jury could reasonably find that Nona and appellant were acting together with a common purpose to steal Lenz's billfold and money; that appellant was intentionally aiding, assisting and abetting Nona in the theft of the billfold; and that appellant was guilty, as charged. State v. Conway, 348 Mo. 580, 154 S.W.2d 128, 130; State v. Dowling, 360 Mo. 746, 230 S.W.2d 691, 694; State v. Wall, 339 Mo. 111, 96 S.W.2d 36, 38. The evidence produced by the state when considered as a whole was sufficient to sustain a finding of appellant's guilt beyond a reasonable doubt and the facts shown were inconsistent with any reasonable theory of appellant's innocence. State v. Wall, supra. The intent and common purpose of defendant and Nona could be shown by circumstances. State v. Dowling, supra. The motion for a directed verdict of acquittal was properly overruled.

Appellant further contends that "the court erred in permitting a police officer to testify that appellant admitted while under

arrest he had been convicted of the crime of burglary and larceny when appellant had not offered himself as a witness." In support of the assignment appellant argues that it was error " * * * since defendant had not offered himself as a witness and since it was highly improper and prejudicial to permit the State to produce such evidence." Appellant further contends that "this highly inflammatory error" was not cured by the trial court later withdrawing it from the jury's consideration.

■ As stated, the record shows that appellant was prosecuted under the habitual criminal act and a prior conviction for a specific felony, to wit, "Breaking Jail", was charged in the amended information. Such fact, when alleged, had to be proven and it could of course be proven by the admissions of the defendant. State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756. The admissibility of such evidence was in no way dependent upon whether or not defendant offered himself as a witness in the case. State v. Jones, 339 Mo. 893, 98 S.W.2d 586, 587. The record further shows that witness Andrew Ritter, who arrested appellant, was questioned as follows: "Officer did you question this defendant as to whether or not he had ever been convicted of a prior felony?" Defendant's counsel thereupon asked for a mistrial and asked that counsel for the state be reprimanded for making an improper statement. The request was overruled and the witness answered, "Yes, sir." Witness was then asked, "What, if anything, did he answer?" The request for a mistrial was renewed and overruled and the question re-asked. The witness answered: "He stated that he'd been sentenced to two years in the Missouri State Penitentiary in 1950. Q. And on what charge. A. Burglary and larceny and jail break." Defendant's counsel again asked for a mistrial and the request was overruled. Subsequently, near the close of the case the court in the presence of the jury stated: "Let the record show that the Court is striking that statement of the officer that the defendant was convicted of burglary and larceny and jail break, and strike it from the record, and I am telling the jury to disregard that statement by the officer at this time. All right, you may proceed." No further objection or request for relief was made by counsel for defendant with reference to the court's action.

■ The record does not sustain the contention that the court erred in permitting the witness to testify that while under arrest the defendant admitted he had been convicted of burglary and larceny. There was no objection to the specific question. Of course the evidence as to the prior conviction for burglary and larceny was not competent evidence, but that is not the issue presented. The issue here is: Did the court err in permitting the evidence to reach the jury? There is no suggestion in the record that the court was advised or knew that defendant had been convicted of any felony other than of the one alleged in the information, to wit, breaking jail. The prior answer of the witness referred to a single term of imprisonment. Not only was no objection made to the specific question that brought forth the objectionable answer, but there is nothing in the record to indicate that the court was advised in any way that the question might get an objectionable answer as to a prior felony other than the one alleged in the information. There is no contention here that the court erred in refusing to discharge the jury after the question was answered. The assignment is that the court erred *in permitting the officer to testify* that defendant admitted he had been convicted of burglary and larceny. There was no error in permitting the question to be answered and the answer to come before the jury under the circumstances shown. The allegation as to a prior conviction for breaking jail could properly be proven by an admission. State v. Hannon, Mo.Sup., 204 S.W.2d 915, 917. And see State v. Kimbrough, 350 Mo. 609, 166 S.W.2d 1077, 1081. The fact that the officer answered "burglary and larceny and jail break", when only "jail break" was proper and apparently anticipated by the court and counsel does not show prejudicial error. The court later struck out the entire answer and no objection was raised in any manner to his action in so doing. The assignment is overruled.

■ Appellant finally contends that "the court erred in giving Instruction No. 1 because it was misleading and confusing and gave the jury a roving commission to find the defendant guilty." Appellant argues that the instruction is a mere abstract statement of law; that "the instruction was in no way tied to the facts of this case nor to other instructions"; and that "under this instruction the jury could have found defendant guilty if appellant, without knowledge of the theft, inadvertently assisted Nona Hardin by helping her to escape on the mistaken belief that she had been unjustly accused." The motion for a new trial, however, does not charge that Instruction No. 1 is abstract, misleading or confusing, but charges that it "gave the jury a roving commission to find defendant guilty." Objections to instructions not mentioned in the motion for a new trial may not be considered on appeal. Section 547.-030; State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 697(19). Appellant makes no contention that the instruction contains an erroneous statement of the law in any specific respect, nor does he undertake to point out wherein, why or in what respects the instruction is misleading and confusing or why it gave or could give the jury a roving commission to find appellant guilty.

Instruction No. 1 is a numbered subdivision of a single charge to the jury. The first portion of the charge is not numbered, but the last portion contains nine numbered subdivisions. The charge begins as follows:

"Gentlemen of the Jury: The State of Missouri, by the amended information in this case, which was filed in this court on the 27th day of July, 1953, charges the defendants with the offense of larceny from the person over $30.00.

"A severance has been granted in the case and Leo Lawrence is now alone on trial and pleads not guilty, thereby raising an issue of fact between the defendant Leo Lawrence and the State of Missouri, which you must determine from all the evidence in the case.

"It is the duty of the Court to instruct you on all questions of law arising in this case and it is your duty to receive such instructions as the law of the case and to find the defendant, Leo Lawrence, guilty or not guilty, according to the law as declared by the Court and the evidence as you have received it under the direction of the Court.

## Instruction No. 1

"All persons are equally guilty who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly, is the act of all and of each one so acting. However, the mere presence of one at or near the scene of a crime does not render him liable as a participator therein. If one is only a spectator, innocent of any unlawful act or criminal intent, and does not aid, abet, assist, advise, or encourage another or others in the commission of a crime, that person is not liable as a principal or otherwise, and should be acquitted. If, however, a person be present, and by words or actions, aids, abets, assists, advises or encourages the crime, with the intent that the words or acts should encourage and abet the crime committed, then that person is equally guilty with the person or persons who actually commit the physical deed.

## Instruction No. 2

■■ "The Court instructs the jury that if you find and believe from the evidence in this case, beyond a reasonable doubt, that at the City of St. Louis and State of Missouri, on or about the 24th day of May, 1953, or at any time within three years next before the filing of the amended information herein, the defendant, Leo Lawrence, either acting alone or jointly with another or others, unlawfully and feloniously did steal, take and carry away from the possession and from the person of Joseph Lenz, two hundred dollars, lawful money of the United States of the value of two hundred dollars, and a brown leather billfold of the value of fifty cents * * *." The instruction continued in approved form, dealing

with defendant as a principal in the first degree, and requiring all necessary findings to a verdict of guilty. See Section 556.170. It is well settled that instructions must be read together as an entire charge in order to determine their propriety. State v. Martin, Mo.Sup., 260 S.W.2d 536, 540(5). When the instructions are so considered, it is apparent that Instruction No. 1 did not give the jury a roving commission to find defendant guilty, but instead required the jury to make all of the necessary specific findings set forth in Instruction No. 2, before returning a verdict of guilty. The assignment is overruled. State v. Dowling, supra, 230 S.W.2d 691, 694; State v. Mayberry, Mo.Sup., 272 S.W.2d 236, 243(20).

The information is sufficient in form and substance. The verdict is in proper form. Appellant was present in person and represented by counsel throughout the trial. The penalty assessed was within the limits fixed by statute. Allocution was accorded and the judgment and sentence are responsive to the verdict of the jury.

The judgment is affirmed.

All concur.