**STATE of Missouri, Respondent,**

v.

**Samuel Lee LASSWELL, Appellant.**

**No. 7657.**

Springfield Court of Appeals.

Missouri.

March 5, 1958.

 

Esco V. Kell, West Plains, for appellant.

William E. Gladden, Houston, for respondent.

STONE, Presiding Judge.

Defendant appeals from the judgment entered upon the jury verdict finding him guilty of, and assessing his punishment at a fine of $5 for, driving and operating upon the public highways "a commercial motor vehicle" owned by him on which there was not displayed "the name of the owner * *, the address from which such motor vehicle was operated, (and) the gross weight for which the said vehicle was licensed." See 16 V.A.M.S., Sections 301.010(1), 301.060, 301.330 and 301.440. (All references to Sections 301.010, 301.060 and 301.330 are to those statutes as re-enacted Laws of 1951, pp. 696, 699 and 704, respectively.)

▆▆ Defendant's initial complaint challenges the sufficiency of the amended information, because it did not state whether defendant was operating a "property carrying," "passenger carrying," or "property carrying local" commercial vehicle. Although commercial motor vehicles are subclassified in Section 301.060 dealing with annual registration fees, Section 301.330 (under which instant defendant is charged) plainly requires certain information to be displayed on "*all* commercial motor vehicles." Where, as here, the statute [Section 301.330] sets forth the constituent elements of the offense and so individuates it that the defendant has proper notice of the specific offense for which he is to be tried, an information charging the offense substantially in the language of the statute is sufficient. State v. Saussele, Mo., 265 S.W. 2d 290, 293(1, 2); State v. Lundry, 361 Mo. 156, 233 S.W.2d 734, 736(4). Mindful also that the same nicety of legal draftmanship is not required in informations charging misdemeanors as in those charging felonies [State v. Sargent, 241 Mo.App. 1085, 1096, 256 S.W.2d 265, 272; State v. Short, 241 Mo.App. 1, 228 S.W.2d 15, 19(8); State

v. Jones, 237 Mo.App. 714, 718, 164 S.W.2d 85, 88] and that an information will not be held bad after verdict unless it fails in some essential averment necessary in description of the offense [State v. Hardy, 359 Mo. 1169, 225 S.W.2d 693, 695–696(2, 3); State v. Biven, Mo., 151 S.W.2d 1114, 1118(10); State v. Granger, Mo.App., 199 S.W.2d 896, 899(6)], we conclude that defendant's attack upon the amended information in the case at bar is without substance or merit. We observe parenthetically that no question has been raised, and consequently we do not concern ourselves, as to whether Section 301.330 is so vague that a criminal offense may not be charged thereunder, in that the statute may not adequately define and properly notify *the class of persons* who may be inhibited as offenders.

■ In considering defendant's further contention that the evidence was insufficient to support the conviction, we review the evidence in the light most favorable to the state and accord to the state the benefit of such favorable inferences as may be drawn legitimately from the facts proved. State v. Thomas, Mo., 309 S.W.2d 607; State v. Morris, Mo., 307 S.W.2d 667, 668(1); State v. Burkhart, Mo., 242 S.W.2d 12, 14(1). When stopped by a trooper of the Missouri State Highway Patrol on U. S. Highways 60–63 in Texas County on February 9, 1956, defendant was driving what is "commonly called" a 1955 Ford half-ton pickup, which he had purchased from the Ford dealer in West Plains, Missouri, during June, 1955. As defendant described his vehicle, it, "just like all pickups," had a bed "back of the cab." The bed was "the smallest one they make," estimated as "something like" five feet in length and "perhaps" three and one-half to four feet in width. It was "open," i. e., with "no covering over it," and had "a tailgate at the back." When defendant was cited by the trooper, the bed was empty. *The pickup carried "a truck license" plate,* but none of the information required by Section 301.330 was displayed on the pickup be-cause, as defendant said, "he didn't believe it was necessary."

Defendant's insistence as to the insufficiency of the evidence rests, in the final analysis, on the question whether the jury properly should have been permitted to find, and reasonably could have found, that defendant's 1955 Ford half-ton pickup was a "commercial motor vehicle" within the meaning and contemplation of Section 301.330 which is applicable to *"all* commercial motor vehicles." In consideration of this question, we must be controlled by the statutory definition of "commercial motor vehicle" in Section 301.010(1), to-wit, "a motor vehicle designed *or* regularly used for carrying freight and merchandise"; and, since the state frankly concedes that there was no evidence that defendant's Ford pickup had been *"regularly used* for carrying freight and merchandise," our inquiry is restricted further to the narrow question as to whether the jury reasonably might have found that such pickup was "a motor vehicle *designed* * * * for carrying freight and merchandise." (All emphasis herein is ours.)

■ "Designed" has been defined as "appropriate, fit, prepared, or suitable" and also as "adapted, designated, or intended." 26A C.J.S. 863; Smith v. Commonwealth, 190 Va. 10, 55 S.E.2d 427, 429. See also Black's Law Dictionary (4th Ed.), pp. 533–534. When applied to property, "designed" ordinarily refers to the purpose for which it has been constructed [26A C.J.S. 863], and the purpose contemplated and intended by *the manufacturer, not the purchaser,* usually becomes the controlling factor. Consult United States v. Sommerhauser, D.C.Kan., 58 F.2d 812, 813; Jacobs v. Danciger, 328 Mo. 458, 467, 41 S.W.2d 389, 391(5), 77 A.L.R. 1237; State v. Etchman, 184 Mo. 193, 201, 83 S.W. 978, 980. "Freight is defined as the transportation of goods" [Ex parte Lockhart, 350 Mo.(banc) 1220, 1228, 171 S.W.2d 660, 663]; and, "merchandise" is a broad and comprehensive term, embracing all tangible

articles of commerce—whatever is usually bought or sold in trade. State v. Jeffords, Mo., 64 S.W.2d 241, 242; 57 C.J.S., Merchandise, p. 1055. "Merchandise may mean cambric, needles, or crowbars, sugar or vinegar, Coates No. 200 cotton thread or two-inch cable rope, or * * * any one of the hundreds of articles classed as merchandise" [Whitewater Mercantile Co. v. Devore, 130 Mo.App. 339, 347, 109 S.W. 808, 809], and the term "merchandise" also may encompass agricultural or horticultural products. State v. Long, 203 Mo.App. 427, 429, 220 S.W. 690, 691. So, it may be said that a "commercial motor vehicle" within the contemplation of the statutory definition here controlling, to-wit, "a motor vehicle designed * * * for carrying freight and merchandise" [Section 301.010(1)], is a motor vehicle suitable and adapted for the purpose, intended by the manufacturer, of the transportation of goods and tangible articles of commerce, whatever they may be.

◼ Instant defendant, who runs a sawmill and makes hardwood flooring (in connection with which he operates a large "tractor-trailer van" on which 32,000 to 34,000 pounds are hauled), argues that his Ford pickup was not adapted for use in hauling logs and hardwood flooring, and that the evidence showed only that he had carried in the bed of the pickup a spare tire and "a bunch of tools," such as might have been carried "in the back end of my car." But, defendant's argument loses sight of the fact that the determinative issue was *not* whether defendant's pickup actually had been used for carrying merchandise or whether the pickup was designed for use in hauling logs or hardwood flooring, but rather was whether his pickup was "a motor vehicle designed * * * for carrying freight and merchandise" [Section 301.010 (1)], i. e., whether it was suitable and adapted for the purpose, intended by the manufacturer, of the transportation of goods and tangible articles of commerce, whatever they might have been. Of course, the purpose to which we refer is the *pri-*

*mary* or *dominant* purpose, as distinguished from a *secondary* or *incidental* one. Thus, the fact that passengers may be, and in fact are, transported by a motor vehicle does not establish its status as an automobile. For, "(a) large heavy duty truck has an even wider front seat and a larger bed behind the cab in which many passengers can be, and sometimes are, transported; but if, for example, such a vehicle be used to transport a troop of Boy Scouts to camp, it does not for that reason become an automobile, as distinguished from a truck. On the other hand, if one hauls a ton of lead in the rear seat and rear trunk of his sedan from one location to another, the vehicle remains a sedan." Roller v. Hartford Accident & Indemnity Co., 24 Wash.2d 473, 166 P.2d 173, 178.

◼ Literally hundreds of thousands of motor vehicles commonly described and known as "pickups" have been manufactured and sold. "Everyone is familiar with them and with their appearance, as seen on our roads and streets and as represented in the advertising in our various periodicals. In our opinion, everyone regards them, and thinks of them, as trucks." Roller v. Hartford Accident & Indemnity Co., supra, 166 P.2d loc. cit. 178. We dare say that a holding, *as a matter of law*, that a pickup is *not* suitable and adapted for the intended purpose of transportation of goods and tangible articles of commerce would startle and dumfound manufacturers and purchasers alike, and we are not persuaded that so bold and brash a judicial pronouncement could be justified under any theory or in any view of the record before us. Our conclusion is that the jury properly was permitted to find, and reasonably could have found, that defendant's 1955 Ford half-ton pickup was a "commercial motor vehicle"; and that, since none of the information required by Section 301.330 was displayed on the pickup, the trial court did not err in overruling defendant's motion for a judgment of acquittal. The wisdom of the legislative policy, as evidenced by that statutory enactment, is for the General

Assembly and not the courts. State on information of Dalton v. Miles Laboratories, 365 Mo. 350, 366, 282 S.W.2d 564, 574(15); State v. Humphries, 350 Mo. 938, 941, 169 S.W.2d 350, 352(2); State v. One "Jack and Jill" Pinball Machine, Mo.App., 224 S.W.2d 854, 859(5).

■ The only other point which defendant briefs on appeal is that the state's principal instruction S–1 was erroneous "because it was broader than the proof" and "invaded the province of the jury." However, those grounds were not presented and preserved in defendant's motion for new trial, and accordingly they may not be considered and ruled on appeal. Section 547.030, RSMo 1949, 39 V.A.M.S.; Supreme Court Rule 27.20, 42 V.A.M.S.; State v. Neal, 350 Mo. 1002, 169 S.W.2d 686, 697(19); State v. Foster, 355 Mo. 577, 197 S.W.2d 313, 319(10); State v. Lawrence, Mo., 280 S.W.2d 842, 848(6).

The judgment of conviction should be and is affirmed.

McDOWELL and RUARK, JJ., concur.