**STATE of Missouri, Respondent,**

v.

**Raymond Joseph BOOTHE, Appellant.**

**No. 49148.**

Supreme Court of Missouri,

Division No. 2.

Feb. 11, 1963.

R. B. Kirwan, Kansas City, for appellant.

Thomas F. Eagleton, Atty. Gen., Martin M. Lipsitz, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner

Defendant has appealed from a judgment whereby he was sentenced to imprisonment for four years for burglary in the second degree. The case was tried before the court without a jury by express agreement of defendant. The "one complaint" of defendant on this appeal is that "there is no evidence that connects him with this burglary." Defendant did not offer any evidence. We shall set forth the evidence of the State in considerable detail.

At 6:05 o'clock of the evening of January 31, 1961, Earl Barnhart, the general manager of the Clark Retread Service at Warrensburg, Missouri, closed the place of business, and in doing so checked the rear and west sides of the building. About 8:05 o'clock that evening Leonard Medlin, a master sergeant at a nearby Air Force Base, who previously had worked part time at Clarks, arrived at the shop to work on a radio. Through a window he saw a man in the building, later identified as James Harley Higdon, standing under a light where "they normally parked trucks at night." When Higdon saw Sergeant Medlin he yelled "Oh" and then "ran and scrambled through the rear window in the sliding door" on the south side of the building. Sergeant Medlin crossed the street to a service station and called the police. He then saw Higdon and another man, identified as defendant, come out of an alley from behind Schein Truck Lines' Warehouse, which was the building east of the Clark building, and walk to a 1951 Chrysler automobile and drive away. The Chrysler was parked "not more than five feet" from, and "almost in front of the west door," of the building. Sergeant Medlin followed the Chrysler a short distance, and observed its license number which he gave to the police, and a short time later a patrolman stopped and arrested Higdon and defendant a few miles south of Warrensburg while in a 1951 Chrysler which had the same license number as that reported by Sergeant Medlin.

In the trial of the case several photographs of the building occupied by Clark Retread Service were admitted in evidence, and the witnesses, to a great extent, testified in relation to these photographs which have not been filed with this court as a part of the transcript. This has resulted in some difficulty in determining precisely the location of the doors in the building and their relation to certain footprints found in mud near the building. The following is what we gather from the testimony.

·· When Earl Barnhart and the police offi-·cers arrived it was discovered that in the front or west door the window pane next to the door latch had been broken out. The "latch on the door was open," but in order to open the door a key was necessary and apparently this door had not been opened. "Adjacent to and west" of this door there were two sets of freshly made foot prints in some soft mud, and it appeared that "someone had approached the door, stepped ·down and gone to the south around the building." On the south side of the building, a window had been broken out of a large sliding door, and it was out of this window that Sergeant Medlin saw Higdon leave the building. The police took samples of the mud "from the edge of the foot prints" and also took samples of the glass from the two doors. When Higdon ·and appellant were arrested their shoes were muddy. All the above mentioned samples and the shoes of Higdon and defendant were sent to the laboratory of the Missouri State Highway Patrol where they were examined by a qualified chemist and laboratory technician. Gravitation and density tests made of the mud samples from the edge of the footprints and of mud samples taken from the shoes of defendant and Higdon revealed that the samples were "basically the same." In addition, in the mud samples taken from the shoes of Higdon and defendant there was "some glass" which "by general appearance" looked to be the same as the glass samples taken from the area of the door. However, the technician could not say "without any doubt" that the mud on defendant's shoes and the mud taken from the footprints were "identically the same," or that the glass in the mud on the shoes was "identical with the glass samples found at the door."

▆ The evidence in this case clearly authorized a finding that Higdon was guilty of burglary in the second degree. As to the defendant the evidence is wholly circumstantial. There is no evidence from which it may be inferred that he actually broke into or entered the building. How-ever, if he aided and abetted Higdon in the burglary defendant also was guilty of burglary. State v. Whitaker, Mo., 275 S.W. 2d 316 [12]; State v. Massey, 358 Mo. 1108, 219 S.W.2d 326. It was not necessary that defendant actually commit the act of breaking or that he actually enter the building. State v. Whitaker, supra [12]; State v. Wall, 339 Mo. 111, 96 S.W.2d 36 [5]. When the evidence of the defendant's participation in the offense charged is circumstantial, as in this case, "'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence,'" State v. Burton, Mo., 357 S.W.2d 927 [1], and in determining the sufficiency of the evidence to support the verdict, "all of the substantial evidence offered by the State is taken as true, together with all reasonable inferences to be drawn therefrom, and by substantial evidence is meant 'evidence from which the triers of the fact reasonably could find the issue in harmony therewith.'" State v. Whitaker, supra 275 S. W.2d at p. 319 [10–11]. When analyzed according to the above rules, the evidence reveals the following. A burglary was in fact committed, and Higdon was at least one of the participants. In the commission of the burglary he and another person went to the front or west door of the building and broke out the glass and apparently effected an entry because the latch on the inside had been opened. The evidence authorizes a finding that this second person was the defendant because there were two sets of footprints in the mud in the area of the door where the glass was broken, and when apprehended a short time later defendant had mud on his shoes "basically the same" as that in which the footprints were made, and more important, the mud on his shoes contained glass which appeared to be the same as the glass broken from the door. In addition, Higdon and

defendant went to one door and apparently were unsuccessful in opening it, and then, as the footprints in the mud indicated, both started toward the back door where an entry was made by Higdon. Upon discovery, Higdon and defendant drove away together in an automobile. This clearly authorizes a finding that defendant and Higdon were working together from the time they approached the front or west door until they drove away in the automobile. It was during this time that two acts of breaking and entering were in fact committed.

When thus analyzed, every act of defendant inferred from the circumstances is consistent with the others, and all are consistent with the hypothesis of his guilt. Defendant argues that they are not inconsistent with his innocence, and he asserts, in effect, that defendant may have come upon the scene at the opportune time, or perhaps inopportune time, to be offered and to accept a ride in Higdon's automobile after Higdon had been discovered and was leaving the scene of the burglary. It is true that the circumstances must exclude every reasonable hypothesis of innocence, State v. Burton, supra, but this does not mean that they must exclude every unreasonable hypothesis. This hypothesis proposed by defendant ignores his presence at the front or west door as evidenced by the footprints, and the mud and glass on his shoes, and is premised on the unreasonable hypothesis that at nighttime the defendant, presumably a total stranger to Higdon, could in the extremely short interval between the time Sergeant Medlin saw Higdon in the building and when he saw Higdon and defendant walk from the area south of the building and enter the automobile, negotiate for and be offered a ride in Higdon's automobile. We necessarily conclude that the circumstances established by the evidence and relied on by the State to demonstrate defendant's participation in the burglary meet the minimum requirements to support the finding of guilty.

The above disposes of the one contention in defendant's brief. There is no challenge as to any of those matters for which an assignment of error in a motion for new trial is not required for appellate review, but notwithstanding this we have reviewed them and find no prejudicial error.

The judgment is affirmed.

BOHLING and BARRETT, CC., concur.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

All of the Judges concur.