**Ray Leo BAUGH, Petitioner,**

v.

**Harold R. SWENSON, Warden, Respondent.**

**No. 1050.**

United States District Court
W. D. Missouri,
Central Division.

Feb. 13, 1968.

Granville Collins, Edward H. Hunvald, Jr., Columbia, Mo., for petitioner.

Norman H. Anderson, Atty. Gen., Courtney Goodman, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

## MEMORANDUM AND ORDER

JOHN W. OLIVER, District Judge.

Petitioner, an inmate at the Missouri State Penitentiary at Jefferson City, seeks relief by a petition for a writ of habeas corpus.

There is no question but that petitioner has exhausted his available state court remedies. See State v. Baugh, Mo. 1964, 382 S.W.2d 608. We so find.

The historical facts about which the legal issue of this case arises were stated by the Supreme Court of Missouri:

On October 15, 1957, appellant was tried and convicted in the St. Louis Circuit Court as a habitual criminal of statutory rape. In accordance with the habitual criminal act then effective (Sections 556.280, 556.290, RSMo 1949, V.A.M.S.), the jury returned the mandatory sentence of imprisonment for life. The conviction was affirmed by the Supreme Court en banc. State v. Baugh, 323 S.W.2d 685.

The basis of the proceeding here under consideration was an incident which occurred during the trial and which was not reported in the transcript on the appeal from the conviction.

On October 15, 1957, after the case had been submitted to the jury and the jury had retired to the jury room for its deliberations, appellant's trial counsel, Mr. C. Arthur Anderson, returned to his office to await the jury's verdict. While Mr. Anderson was absent and appellant was in the custody of the sheriff, and about an hour after the jury had retired to consider its verdict, the following transpired, as recorded in the notes of the official court reporter:

(* * * '4:05 P.M. Jury returns to ask legal question. Present: Brady and Reardon for State. No one appearing for Defendant. Defendant appearing in person.')

THE COURT: Now, gentlemen of the jury, the sheriff has informed me that the jury desires to ask a legal question. While Mr. Anderson is not present, I think we can probably entertain your question and endeavor to answer it, even in his absence.

A JUROR: Your Honor, the jury have not come to a verdict. We wish to ask this question of law, quoting: 'Do we, the jury, have any right to assess the penalty other than life even if we find the defendant guilty as charged of both the Illinois and St. Louis offenses.'

THE COURT: Now, the answer to this is shown necessarily in the instructions already given you. You have three forms of verdict besides those instructions. The law provides what you stated there, if the jury considers it more appropriate to use the form of verdict that does not refer to the prior conviction we would have no objection to their using that form of verdict. That, I think, with the reference to the instructions, is the only answer that I can properly give, and I think that probably is clear enough to you as to what you should do. You may use that form of verdict.

A JUROR: I think that answers our question, Your Honor. May we be excused?

THE COURT: The sheriff will take the jury to their deliberating room, and when the jury again departs, we will again be in temporary recess.

(Reporter's note: Verdict was returned at 4:35 P.M. of the same day).

Appellant's counsel not having become aware of the communication until nearly four years after its occurrence, no assignment of error based upon this communication between the judge and the jury was made in appellant's motion for a new trial. [382 S.W.2d 608, 609–610].

The question presented is whether, under the facts and circumstances of this case, petitioner was denied his constitutionally guaranteed right to the assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

The right to counsel, as established in *Gideon*, attaches to any stage in the proceedings where the lack of counsel "might derogate the accused's right to a fair trial." United States v. Wade, 388 U.S. 218, 226, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). See also Powell v. Staate of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963); Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in regard to the particular stages of a criminal proceeding that must be deemed critical in the sense that counsel must be present.

Hamilton v. State of Alabama reiterated the long-standing rule of Powell v. State of Alabama that an accused "requires the guiding hand of counsel at every step of the proceedings against him." Hamilton v. State of Alabama held that if a critical stage of a criminal proceeding is in fact involved, then, because "the degree of prejudice can never be known," a court will not "stop to determine whether prejudice resulted" (368 U.S. at 55, 82 S.Ct. at 159). In other words, it becomes impossible to say that prejudice did not in fact occur, under such circumstances. Gideon v. Wainwright proceeded on the implicit assumption that all parts of an actual trial are critical stages and that one's constitutional right is violated if he is forced "to face his accusers without a lawyer to assist him" (372 U.S. at 344, 83 S.Ct. at 797). Compare Swenson v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L. Ed.2d 33, in which it was held that

whether or not a defendant requests counsel is immaterial.

■ We believe, and we so find, that when the trial judge in this case attempted to answer the jury's legal question he did so at a critical stage of the actual trial, that the possibility of prejudice automatically arose, and that, therefore, the constitutional right to have counsel present attached.

The Supreme Court of Missouri determined on petitioner's appeal from a denial of his Rule 27.26, V.A.M.R., motion that the communication made by the trial judge to the jury in this case was not legally an "instruction" within the meaning of Mo.S.Ct. Rule 26.02 (6) which requires all instructions to the jury to be in writing. The Supreme Court of Missouri stated:

> Mere reference by the judge to the instructions previously given is not an instruction within the meaning of this provision. * * * In our opinion, the communication here was of that nature. [382 S.W.2d at 612].

We accept the Supreme Court of Missouri's determination that the trial judge did not give the jury an "instruction" of law within the meaning of Mo.S.Ct. 26.02 (6).

However, the undisputed facts of this case sharply distinguish it from a case in which the trial judge might have simply stated that the answer to the jury's legal question was contained in the instructions already given. Certainly, it can not fairly be said that the trial court did not do more in this case. Here the trial judge must be said to have attempted to answer the jury's question by emphasizing, or perhaps even interpreting, the written instructions that had been given the jury. There can be no doubt that this occurred at a critical stage of the trial; it was at a critical stage of the very deliberation of the jury that demonstrated its need for legal guidance.

We must and do find that the trial judge's response to the jury's question could have been either confusing or contradictory when read in light of the previous instructions. Indeed, it is possible to say that what was said was simply not even responsive to the precise question asked by the jury.

The jury never was directly informed whether it had a right to assess a penalty other than life if it found the defendant guilty as charged of both the Illinois and St. Louis offenses. Indeed, what was said orally to the jury more or less suggested that even if it had made the factual determinations its question implied, it nevertheless had a right to refuse to apply the law it had been given in its written instructions.

The necessity for the presence of counsel at the time the trial judge received and made his response to the question of the jury is obvious. Counsel could, and probably should, have first requested that the trial judge simply receive the question from the jury and advise it that he wished to consider the matter with counsel for both sides before making any response. We can not, and need not, speculate whether the trial judge, after discussion of the jury's question with counsel for both sides, would or would not have said what he did say, or that he would have refused defendant counsel's obvious request that whatever might be said be said in writing rather than orally. Nor need we speculate what the trial judge would have done had counsel for the defense objected to what was said orally or whether the trial judge would have modified what he had in fact said if his attention had been directed to the fact that the jury's question had not in any event been directly answered. The answers to those questions cannot ever be known. Nor is that fact important. What is important is that defendant did not have the guiding hand of counsel at an extremely critical point in his trial.

■ We do not, of course, lay down any broad principle that every oral statement that may be made by a trial judge to a jury in the absence of defendant's counsel must be held to violate the federal Constitution. We simply apply the principles established in the cases cited

to the undisputed facts here presented and determine that this particular defendant was denied the effective assistance of counsel for the obvious reason that counsel was not present to render the assistance obviously required. We also hold that speculation about whether a different result would have been reached at the trial if counsel for the defendant had elected to take one course or another, or, in the exercise of judgment, had decided to say or do nothing. The controlling consideration is that the defendant was denied all assistance of counsel at a critical stage of the trial because counsel cannot lend assistance when he is not present in the court room.

We do not believe the fundamental constitutional error may be avoided by application of the harmless error rule. If we were to apply the rule of harmless constitutional error, as established in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 834, 17 L. Ed.2d 705 (1967), to this case, we could not say as a matter of law that beyond any reasonable doubt the State trial judge's response to the jury in this case had no prejudicial effect on the outcome of petitioner's trial. We further find that we cannot say beyond reasonable doubt that counsel's presence would have made no difference.

The Supreme Court of Missouri in effect based its decision in petitioner's case on at least a form of a harmless constitutional error rule before the full statement of the now controlling rule was articulated by the United States Supreme Court in *Chapman*. We have the most serious doubt whether the rule established in *Chapman* has any application to this case; the Supreme Court states that "some constitutional rights [are] so basic to a fair trial that their infraction can never be treated as harmless error [citing Gideon v. Wainwright, supra]" 386 U.S. at 23, 87 S.Ct. at 827. However, applying that rule to this case, we find that respondent has not met the burden there established.

For the above stated reasons, petitioner is entitled to the relief sought in the petition. In accordance with the policy considerations implicit in this Court's order in Jedby v. Swenson, W.D.Mo.1966, 261 F.Supp. 209, 214, it is

Ordered that petitioner is entitled to the relief prayed for but that the writ shall not issue for a period of thirty (30) days in order to afford the State of Missouri, through its Attorney General, the opportunity to have petitioner's conviction set aside or declared to be invalid, to have counsel appointed, and to begin new trial proceedings; it is further

Ordered that if no such trial proceedings are begun within thirty (30) days from the date of this order, the writ shall issue; it is further

Ordered that if such trial proceedings are begun within thirty (30) days from the date of this order, this Court will delay the issuance of the writ until such time as the situation calls for further disposition of this case; it is further

Ordered that the Attorney General keep this Court advised of all proceedings that may be taken consistent with our stay of the issuance of the writ.